JAMES R. MONTGOMERY, Appellant, v. CHICAGO, GREAT WESTERN RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, November 7, 1904.

1. **MASTER AND SERVANT: Assumption of Risk: Master's Negligence.** While the servant assumes all the risks incident to his employment he does not assume any risk arising from the master's negligence.

2. ———: **Contributory Negligence: Switchman: Evidence.** Though the risks incident to the duties of a switchman are great, they do not excuse him from the care and caution which a reasonably prudent person should exercise; and the facts show that plaintiff's negligence contributed directly to his injury.

3. ———: ———: Safe and Dangerous Ways: Servant's Choice.
   When a servant has a choice of two ways of performing his
   labor, one safe, and the other risky, which he voluntarily
   chooses, such choice is contributory negligence precluding re-
   covery for the resulting injury.

Appeal from Clinton Circuit Court.—*Hon. A. D.
Burnes,* Judge.

AFFIRMED.

*John George Parkinson* for appellant.

(1) The master is bound to use ordinary care in
providing and maintaining a reasonably safe place in
which the servant may do his work. Barrows on Neg-
ligence, p. 90; Scott v. Springfield, 81 Mo. App. 312;
Devore v. Railway, 86 Mo. App. 429; Minnier v. Rail-
way, 167 Mo. 99; Cardwell v. Railroad, 90 Mo. App.
31; Herbert v. Boot & Shoe Co., 90 Mo. App. 305; Nash
v. Dowling, 93 Mo. App. 156; Zellers v. Water & Light
Co., 92 Mo. App. 107. (2) The mere knowledge of the
master's negligence and that a risk is to be incurred by
the servant, is not as a matter of law sufficient to de-
feat the servant's action, unless the danger is imminent
and the work could not be done by ordinary care with-
out impending injury. See citations under point I, 93
Mo. App. 209. (3) It is the duty of the master to
inspect and repair and keep in suitable condition the
place of work, instrument and appliances for the ser-
vant. Barrows on Negligence, p. 55; Zellers v. Water
& Light Co., 92 Mo. App. 107.

*James C. Davis* for respondent.

(1) No evidence was introduced on the trial of
the case in the court below as to the cause of the ac-
cident which occasioned appellant's injuries. The neg-
ligent act of the master must be established and the
burden of establishing it is on the servant. Smith v.

Railway, 113 Mo. 70; O'Mallry v. Railway, 113 Mo. 319; Dowell v. Guthrie, 99 Mo. 653; Dowell v. Guthrie, 116 Mo. 646; Murray v. Railway, 101 Mo. 236. (2) If appellant had taken up his position on the stirrup and maintained himself at that point by use of the hand-hold provided for that purpose he would not have been injured. This he expressly admits. Where there are two ways in which a given act may be performed, and the person engaged in the performance of the act voluntarily selects the dangerous way, when a safer one is apparent to him, and he is thereby injured, he is guilty of contributory negligence. Moore v. Railway, 146 Mo. 572. (3) Where a servant has knowledge of the defective condition of a given appliance and the danger attending its use, and yet with such knowledge continues in the use of such appliance, he will be held to have assumed the risk of any injury resulting to him therefrom, in an action by him against the master based thereon. Epperson v. Postal Tel. Co., 155 Mo. 346; Thompson v. Railway, 86 Mo. App. 341; Fugler v. Bothe, 117 Mo. 475; Steinhauser v. Spraul, 127 Mo. 541; Marshall v. Hay Press Co., 69 Mo. App. 256; Halloran v. Foundry Co., 133 Mo. 470.

BROADDUS, J.—Plaintiff sued for damages which he claims he sustained as the result of an injury caused by the negligence of defendant. The evidence disclosed that he was a switchman in defendant's employ at the time of the injury which occurred in its switch yards at St. Joseph, Missouri.

On July 21, 1900, at about ten o'clock at night an engine to which was attached several freight cars stood on defendant's main track headed north ready to be switched south and onto a side track. Plaintiff was stationed at the south end of the train to which was attached a box car. His duty was to throw the switch so as to enable the train to pass from the main to the side track and to give the engineer in charge of the

engine the signal when the switch was open. He threw the switch, gave the signal and stepped on the brake beam and grasped the handhold on the south end of the rear car. After the train had moved backwards some several car lengths a sudden jar caused plaintiff's foot to slip from the beam to the rail of the track where it was caught and crushed by the wheels of the car. Amputation became necessary as a result of the injury.

Plaintiff was an experienced brakeman. He alone testified as to the facts of the case, stating that at the place where he fell the track had been loose and in bad condition for some time prior to the time in question; that in about eight days thereafter he went to the place where he had fallen and found that the point of the frog of the rail had broken off; that he had found this point in the dirt and sand, compared it with the end of the rail and that it fitted to it exactly. He further stated that the blunt point of the rail would jar a car when the wheels passed over it. It was also shown by plaintiff's evidence and a photograph used at the trial that at the north end, but on the side of said car, there was also a handhold and a stirrup for the foot. In answer to a question asked him by defendant's attorney as to why he did not cling to the car at the latter place he said that he did not have any business there, and that owing to a curve in the track the engineer could not have seen his signals from that point. He finally admitted, however, that the engineer could have seen his signals just as well from one position as from the other. He stated, too, the positions were equally dangerous, but in the end admitted that had he been on the stirrup at the side at the north end he would not have been injured. And he assigned as an excuse for getting on the rear end of the car the darkness which would have prevented him from seeing cars on the track behind that he did not want the train to strike.

On the day after his injury plaintiff made certain statements in answer to questions put to him, as follows:

"Q. Could you by more care on your part have prevented the injury? If so, how? A. I don't think I could have avoided the accident only by not getting on the car.

"Q. Was there any defect in anything belonging to the company? If so, what was it and how long had the same existed? A. No.

"Q. Do you attach blame to any one or any thing for your injury? If so, to whom or what? Give your reasons. A. I deem the accident unavoidable."

Plaintiff introduced one witness besides himself whose testimony was to the effect that plaintiff was in his proper place when he was injured. The testimony disclosed that the business of a switchman is of a very hazardous nature.

The defense was that plaintiff had assumed the risk of his employment and that negligence on his part had directly contributed to his injury. The court upon the proof instructed the jury to find for defendant and plaintiff appealed.

The defendant contends that the case is within the rule of law that: "One fully capable of selecting and contracting for himself, who voluntarily enters into an employment with full notice of its dangers, will be held to have assumed the risks of injury incident to such employment." Halloran v. Iron Foundry Co., 133 Mo. 470; Fugler v. Bothe, 117 Mo. 475; Marshall v. Hay Press Co., 69 Mo. App. 256; Steinhauser v. Spraul, 127 Mo. 541. But the rule is not applicable to the facts of this case, as there was some evidence to the effect that defendant company was guilty of negligence in not keeping its track at the place where plaintiff was injured in a reasonably safe condition, and, notwithstanding the plaintiff assumed all the risk incident to his employment, he did not assume any risk whatever

arising out of defendant's negligence. This is so well settled there is no necessity for comment.

Notwithstanding the evidence of negligence on the part of defendant, the question arises whether or not plaintiff was also guilty of negligence that contributed to his injury. While it is true that the risks incident to the duties of a switchman are very great, they do not excuse him from that degree of care and caution which a reasonably prudent person should exercise commensurate to the danger. The evidence shows that switchmen as a rule frequently incur risks which seem almost incredible, but may be accounted for from the well-known fact that constant exposure to danger dulls the sense of caution and engenders recklessness. It seems to have been a theory of plaintiff that this recklessness upon the part of switchmen would relieve him from the imputation of negligence. But the courts cannot approve a custom so fraught with peril as an excuse for want of proper care. Such a rule would impose upon the master practically insurance and indemnity of his servant against his own wrongs.

We think plaintiff made out a case against himself. In other words, he proved that his own negligence directly contributed to his injury. He took a position upon the car by placing one foot on the brakebeam and with one hand grasping the handhold on the end of the car, from which he was thrown while the car was passing over a frog of the track, the fall resulting in his injury. He placed himself in the most dangerous position on the car that he could have selected as the train was moving backwards, and where he would almost certainly be injured should he happen to fall from his place, as the result demonstrated. And also where he was liable to be injured should the train back upon other cars that were on the track. The physical fact was shown by the photograph and by plaintiff's testimony that at the other end of the car, but on its side, there was not only a handhold but also

a stirrup for the foot, which was a safe position and which had he occupied would have prevented the injury. It was further shown that plaintiff could have signaled the engineer as well from the north end of the car as from the south end.

But plaintiff stated that he was at his proper place from which he could guard the train from backing upon other cars on the track. This appears to have been a makeshift excuse for his being there and it must have been so considered by the trial court. Such a pretense ought not to excuse his negligence, because it is a matter of common observation that trains are daily and habitually shoved back against cars standing on switch tracks.

That his injury was the result of his own negligence was conclusively shown. And further, the case seems to be within the following rule:

"It is a familiar principle, which common sense as well as the rules of law ought to teach one, that where an employee of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence." 1 Bailey on Personal Injuries Relating to Master and Servant, section 1121. This rule was approved by the Supreme Court of Missouri in Moore v. Railroad, 146 Mo. 572, where, applying the rule to the facts of the case, it said: "An employee who has a choice of two ways of performing his labor for his master, one of which is perfectly safe, the other subject to risks and dangers, and voluntarily chooses the latter, is guilty of contributory negligence, and cannot recover for the injuries resulting from such choice." The cause is affirmed. All concur.