SUTTLE v. CHOCTAW, O. & G. R. CO.

(Circuit Court of Appeals, Eighth Circuit. March 16, 1906.)

No. 2,236.

MASTER AND SERVANT—INJURY OF SERVANT—ASSUMED RISK.

Plaintiff's intestate was a switchman in the yards of defendant railroad company, and was directed in the nighttime to uncouple a caboose from the car ahead in a train. Both cars were equipped with safety couplers, as required by law, and the caboose had a platform across the front end, by means of which a person could pass from one side of the train to the other. The lever of the coupler on the side on which plaintiff's intestate then stood was disconnected, and, instead of crossing to the other side where the lever could have been used, or going upon the platform where he could have reached and drawn the pin in safety, he went between the cars, which were then moving slowly, and, while there, stumbled and was run over and killed. *Held*, that having selected the more dangerous way of performing his duty, when a safe way was within his choice and known to him, he assumed the risk, and that there could be no recovery for his death.

[Ed. Note.—Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Western District of Arkansas.

Sam R. Chew, for plaintiff in error.

Thomas S. Buzbee (E. B. Pierce, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. Plaintiff's intestate was a switchman in the employ of defendant railroad company, and was, on November 15, 1903, engaged in the performance of his duties in defendant's yards in Booneville, Ark. He was directed to uncouple a caboose from a train of freight cars preparatory to switching it upon a side track. The east end of the caboose, and the west end of the box car to which it was coupled, were equipped with coupling devices, as required by Act Cong. March 2, 1893, c. 196, § 4, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]; but at the time in question the lever on the south side of the caboose was temporarily disconnected from the coupling pin, so that it did not operate. The lever on the north side of the box car was. in good working condition. These cars could ordinarily be coupled or uncoupled by operating either of the levers. When plaintiff's intestate was directed to uncouple the caboose, he was on the south side of the train, which was then standing still. The east end of the caboose was furnished with the ordinary platform for passage from one side to the other. He passed over this platform, turned a switch, and returned to the south side. The train had then started and was moving at a slow rate of four to six miles per hour. There is no evidence of any unusual haste or emergency. Plaintiff's intestate, either knowing before, or then ascertaining, that the lever on the south side of the caboose did not operate the coupling pin, went between the caboose and neighboring box car

while the train was moving, as just stated, for the purpose of lifting the coupling pin with his fingers and thereby disconnecting the two cars. This was in the nighttime. While doing this he stumbled and fell and was run over by the train.

The evidence discloses that there were other safe and practicable methods open to plaintiff for uncoupling the cars. On receiving his orders, he being on the south side, crossed the platform to the north side, turned the switch, and returned to the south side. He might, as he had just done, have stepped across the platform and made use of the lever on the box car. He might have sat on the platform and safely reached over and drawn the pin with his hands. He might have given a signal and had the train stopped for the purpose of safely disconnecting the cars. Moreover, he might, as he should have done, declined to expose himself to danger by unnecessarily going between the two cars in the nighttime, while they were in motion.

The foregoing facts are practically undisputed, and are substantially the same as have been twice expressly passed upon by this court.

In Morris v. Duluth, S. S. & A. Ry. Co., 108 Fed. 747, 47 C. C. A. 661, the facts as stated are that:

"The crew was engaged in placing the rear one of two cars which were attached to an engine upon the side track. The plaintiff had turned the switch to permit this train to back in upon the side track. His subordinate brakeman was riding the train, and it was necessary to uncouple the rear car, so that it could be left upon the side track. There were two levers, one on each side of this train, provided by the company for the purpose of enabling the brakeman to pull the pin between these cars and to uncouple them without incurring the risk and danger of stepping between them for that purpose. The machinery attached to the lever on the plaintiff's side of the train was out of order, so that he could not pull the pin by means of that lever. But the machinery attached to the lever on the opposite side of the train was in working condition, and he could have drawn the pin himself, or could have caused his subordinate to draw it by use of this lever. Notwithstanding this fact, he stepped in between the two cars in the dark, while they were moving about four miles an hour, undertook to pull the pin with his hands, and by this indiscretion induced his injury."

The facts of that case present a striking parallelism to the case now under consideration. After stating the foregoing facts, the court, speaking by Judge Sanborn, disposed of that case thus:

"When there is a comparatively safe and a more dangerous way known to a servant by means of which he may discharge his duty, it is negligence for him to select the more dangerous method, and he thereby assumes the risk of the injury which its use entails. [Citing cases.] * * * The plaintiff knew that he could draw the pin and uncouple these cars in safety by the use of the lever on the opposite side of his train, but he chose to incur the risk and danger of walking between the moving cars and of attempting to draw the pin with his hands."

To the same effect is the case of Gilbert v. Burlington, C. R. & N. Co., 128 Fed. 529, 63 C. C. A. 27, wherein Judge Thayer, in a separate concurring opinion, uses the following language:

"I think that the act of Congress, which was passed for the protection of brakemen, amounts to a legislative declaration that a brakeman ought not to step in between the rails to uncouple a car in a moving train; and when it appears that a brakeman has placed himself in such a situation unnecessarily, not being compelled to do so by stress of circumstances, and receives an injury, he is guilty of such negligence as prevents a recovery."

The case before us is governed by the principles laid down in those cases, and on their authority the judgment of the court below directing a verdict for the defendant must be affirmed, and it is so ordered.