POWELL v. WISCONSIN CENT. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. March 11, 1908.)

No. 2,656.

1. MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS—ASSUMED RISK.

Intestate at the time he was killed was foreman in defendant's switching yard, and was engaged in cutting out and transferring the cars to different tracks. While the train was moving he walked along the side thereof, and, desiring to detach two of the cars, took hold of the lever of the safety appliance brake to uncouple them, but discovering that the brake was not in working order, stepped between the cars while in motion to disengage the pin, when the heel of one of his shoes caught in the frog of the rails, and he was run over and killed. He was well acquainted with the condition of the frog and track, and acted in violation of a known rule forbidding coupling by hand. There was no emergency requiring him to go between the cars, and he could have uncoupled the cars in safety either by signaling the engineer to stop and then passing to the other side and reaching the brake lever on the other car, or he could have waited until the cars had passed him and gone to the opposite side without passing between the cars, both of which were equipped with automatic couplers. *Held*, that intestate, in undertaking to uncouple the cars by hand with knowledge of the situation, was guilty of contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574–600.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. SAME—CONTRIBUTORY NEGLIGENCE.

Intestate was also grossly negligent precluding a recovery for his death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 701–709.]

3. SAME—CUSTOM—EVIDENCE.

Where intestate was killed while attempting to uncouple certain cars by hand, evidence of a witness of very limited experience, and only a short time in defendant's service, that he had known brakemen to go between the cars to couple or uncouple when safety brakes were out of order, without any proof of knowledge or acquiescence on the part of the managers of the railroad company of such conduct, was inadmissible.

In Error to the Circuit Court of the United States for the District of Minnesota.

C. D. O'Brien, for plaintiff in error.

Walter D. Corrigan, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. This is a writ of error to have reviewed the action of the Circuit Court in directing a verdict for the defendant. The plaintiff's intestate, John J. Powell, was in the employ of the defendant railroad company as foreman, superintending the switching of cars of the company in its yards at Minneapolis, Minn. At the time of his injury, he was engaged in directing the movement of a train of freight cars in the yards, for the purpose of cutting out and transferring the cars to different tracks. This was being done by what is known as "kicking" the cars down through a switch where they were turned on to the desired track. While the train was moving, Powell, who was walking along the side thereof, desiring to detach two of the cars, took hold of the lever of the safety appliance brake, which works on the outside of the end of the car, to uncouple them. Discovering that the brake was not in working order, he stepped in between the cars while in motion to disengage the link pin, when the heel of the shoe of his left foot caught in a frog of the rails, and, before he could disengage it, he was run over by the wheels of the car and killed.

The responsibility of the defendant company for this accident is alleged in the petition to be its negligent failure to properly block the frog of the rails or to securely guard it, and without any warning or notice to the deceased "of either the existence or the dangerous character of the same." To support the charge, the petition pleads the following statute of the state of Minnesota (section 2681, Gen. St. 1894), as follows:

"Any person or persons, railroad companies, or corporations owning or operating any railroad or railroads in this state shall be and are hereby required on or before the first day of June, 1887, to so adjust, fill, block and securely guard the frogs, switches and guard rails on their railroads in all yards, etc., so as to thoroughly protect and prevent the feet of employés and other persons from being caught therein."

The switch in question was "the throat of the yard," over which practically all the switching was done in distributing cars and making up trains. It was about three feet from the bridge over which "the drag" of the cars was being drawn backward and forward. This

159 F.—55

switch was what is known as a "Three-Throw Split Switch." The frogs were blocked with iron of the manufacture of the Ajax Manufacturing Company of Chicago, which the evidence tended to show was an approved means for properly blocking such frog. The evidence on behalf of the defendant, which was not contradicted, tended to show that, because of the necessity of operating the rails at the point of junction, it was impracticable to block them out further than was done at said switch. Be this as it may, the deceased, who had worked as such foreman in the said switchyards for nearly two years, was presumptively quite familiar with the frog and blocking in question. The evidence was that he threw this switch almost daily two hundred times, with this frog almost beneath his eyes. So, when he stepped in between the cars on to the rail, he knew where the frog was, and how it was blocked. In addition to this, the act of going in between the cars to effect the uncoupling was entirely voluntary and unnecessary on his part, as there was no exigency demanding such method. In so doing, he acted in direct violation of the known rule of the master. The evidence was that the cars were equipped with the automatic safety appliance brakes, designed to obviate the necessity and danger of the employé going between the cars to couple or uncouple them.

When the deceased applied to take service in this company, there was given him, for which he receipted, the book of rules of the company, one of which enjoined as follows:

"Inasmuch as the coupling apparatus or engines cannot be uniform, in style, size, or strength, and is liable to be broken, and as for various causes it is dangerous to expose between the same, the hands, arms, or persons of those engaged in coupling, all employés are enjoined before coupling cars or engines, to examine so as to know the kind and condition of the draw-heads, draw-bars, lengths and coupling apparatus, and are prohibited from placing in the train any car with a defective coupling until they have first reported its defective condition to the yard master or conductor. Sufficient time is allowed and must be taken by employés in all cases to make the examination required. Coupling by hand is strictly prohibited. * * * All persons entering into or remaining in the service of the company are warned that the business is hazardous, and that in accepting or retaining employment, they must assume the ordinary risks attending and all risks of which, by the exercise of care and caution, they could learn."

The force of the injunction that "coupling by hand is strictly prohibited" becomes manifest, in view of the fact that the defendant company, to comply with the safety appliance act of Congress, had equipped its cars with a safety brake, designed and intended to avoid the danger to employés going between the cars to effect coupling and uncoupling by hand while the cars are in motion. The deceased knew of the safety appliance equipment. On the opposite side of the cars from where he entered between them, the end of the next car was provided with the safety appliance, and by means of the lever on the outside the uncoupling in question could have been safely accomplished. As the movement of this train at the time was subject to his control, when he discovered that the safety brake on his side was out of order, he had, open and apparent to him, two courses: (1) To signal the engineer to stop the engine and then pass to the other side in safety to reach the opposite brake; or (2) to have waited until the

cars passed him, and then have gone on to the opposite side to effect the uncoupling without passing at all between the cars. If he chose, for his own convenience, with his knowledge of the situation, to undertake to effect the uncoupling by hand, when there was an apparently safer method to accomplish the work, with his knowledge of the rule in question, he not only assumed the risk, but was guilty of an act of gross negligence, without which his life would not have been forfeited. The law is that the master is not responsible for an injury thus invited by the employé. Kansas & T. Coal Co. v. Reid, 85 Fed. 914, 29 C. C. A. 475; Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506; Tower Lumber Co. v. Brandvold, 141 Fed. 919, 73 C. C. A. 153; Chicago & Northwestern Ry. Co. v. Davis, 53 Fed. 61, 63, 3 C. C. A. 429; Morris v. Duluth, etc., Ry. Co., 108 Fed. 747, 749, 47 C. C. A. 661; Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 536, 63 C. C. A. 27, 34. The attempt to justify the deceased's conduct in going between the cars as he did by the testimony of a witness, of very limited experience, and only a short time in the defendant's service, that he had known brakemen to so go in between the cars to couple or uncouple when the safety brakes were out of order, without any proof of knowledge or acquiescence on the part of the managers of the company of such conduct, was inadmissible and ineffective. Dawson v. C., R. I. & P. Ry. Co., 114 Fed. 870, 52 C. C. A. 286; St. Louis, K. C. & Col. R. Co. v. Conway (C. C. A.) 156 Fed. 234, 240.

As the case is submitted to this court, the contributory negligence of the deceased is practically conceded. In submitting the case to the court below on request by defendant for a directed verdict, it was conceded that but for what is known as the "Employer's Liability Act," of June 11, 1906, c. 3073, 34 Stat. 232 (U. S. Comp. St. Supp. 1907, p. 891), apportioning the liability for negligence between the employer and employés, the plaintiff under the settled rules of this court could not recover. So, in passing on the request for a directed verdict, the judge said that he "would feel obliged, under the decisions of our Court of Appeals, to declare as a matter of law that the deceased was guilty of contributory negligence, and plaintiff could not therefore recover." He placed his ruling in directing the verdict for the defendant on the ground of assumption of risk by the deceased. As presented to this court in the brief of counsel for the plaintiff in error, the effect of the contributory negligence of the deceased as a question of law as it stood at common law is sought to be avoided alone by said act of Congress. Since the case was tried, and before it was submitted on this writ of error, the Supreme Court has held that said act of Congress is invalid, being in contravention of the federal Constitution. Howard, Adm'r, v. Illinois Central R. Co. et al. (decided January 6, 1908) 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. ——.

The question of assumption of risk argued so elaborately in the briefs of counsel is therefore more academic than essential to the determination of the cause. It results that the judgment of the Circuit Court must be affirmed.