LONA BRANNOCK, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, March 8, 1910.**

1. **MASTER AND SERVANT: Railroads: Negligence: Injury to Servant: Manner of Injury: Question for Jury.** In an action against a railroad company for the death of a switchman, the question whether his injury was caused by catching his foot between the main rail and the guardrail, *held*, under the evidence, for the jury.

2. ———: ———: ———: **Failure to Block Rails: Statute.** The failure of a railroad company to block its guardrails, as provided by sections 1123, 1125, incl., Revised Statutes 1899, is negligent conduct.

3. ———: **Negligence: Assumption of Risk: Master's Negligence.** An employee does not assume risks incident to the negligence of his employer and does not assume the risk of working about a device, which the master has not safeguarded as required by statute, even though the employee is aware of its condition.

4. ———: **Railroads: Negligence: Injury to Servant: Going Between Moving Cars: Speed of Cars.** An employee of a railroad who goes between moving cars to couple or uncouple them is not necessarily guilty of negligence as a court matter, but whether such an act is or is not negligence depends on its coincidents, especially the speed of the cars; and probably there would be no legal conclusion of negligence if the speed was not more than four to six miles per hour.

5. ———: ———: ———: ———: ———: **Safety Device Furnished.** Where a device has been provided to enable railroad cars to be cut or coupled without taking the risk of entering between them and a rule forbids the latter method, an employee who resorts to the more dangerous method, instead of the safer one, will be denied a recovery; but if a condition arises that prevents the use of the safer method and the employee goes between the cars, the propriety of the act will be determined according to the principle which would apply if no safety device had been furnished.

Brannock v. Railroad.

6. **EVIDENCE: Presumptions: Exist Only In Absence of Evidence.** Where there is evidence on an issue of fact, the truth is to be found from the evidence, and not presumed, as in the absence of evidence.

7. **———: Conclusiveness: Trial Practice.** Testimony in the nature of an opinion on the issue to be tried, rather than the statement of a fact, is not conclusive on the party producing it, especially if there is countervailing evidence or for any reason the jury might believe the contrary.

8. **MASTER AND SERVANT: Railroads: Negligence: Injury to Servant: Going Between Moving Cars: Sufficiency of Evidence.** In an action for the death of a railroad switchman caused by his going between moving cars to uncouple them, testimony that deceased held up the lever provided for uncoupling the cars while walking seven or eight feet to keep up with the cars, which were moving from four to six miles per hour, was not substantial proof of reasonable effort to manipulate the lever or such as a careful employee would have been satisfied with before taking the risk of entering between the cars. But evidence that deceased walked by the cars for twenty yards with his hand on the lever, and that he may have been endeavoring over said distance to cut the cars by the lever, it appearing he was intent on the purpose to cut them from his grasping the handhold with one hand and the coupling pin with the other, after going between them, was sufficient proof of reasonable effort to cut them from the outside before facing the hazard of going between them.

9. **———: ———: ———: ———: ———: Contributory Negligence: Jury Question.** In an action for the death of a switchman by being run over while between cars in the act of uncoupling them, the question of his negligence in going between the cars *held*, under the evidence, for the jury.

10. **———: ———: ———: ———: ———: Unblocked Rails: Proximate Cause.** In an action for the death of a railroad switchman, who, while between moving cars endeavoring to uncouple them, slipped and caught his foot in an unblocked guardrail, causing injuries from which he died, if the jury found he was negligent in going between the cars, such conduct would be a concurrent cause with defendant's.

11. **NEGLIGENCE: Knowledge of Danger: Proximate Cause.** Ability to anticipate by ordinary forethought that harm is likely to result from the wrongful conduct of another if one does a given careless act, is material on the question of whether said act is superseded as the proximate cause of the ensuing harm, and if the act of carelessness is performed knowing, or with

good reason to know, it exposes the actor to injury from another's tort and injury follows, the first carelessness remains a concurrent and proximate cause.

12. **MASTER AND SERVANT:** Railroads: Negligence: Injury to Servant: Instructions: Failure to Submit Contributory Negligence. In an action for the death of a railroad switchman caused by his going between moving cars to uncouple them, the main instruction for plaintiff was erroneous in omitting from consideration the defense of contributory negligence of deceased in going between the moving cars.

Appeal from Stoddard Circuit Court.—*Hon. Jas. L. Fort,* Judge.

REVERSED AND REMANDED.

*W. F. Evans, W. J. Orr* and *S. L. Clark* for appellant.

(1)   The failure to block the frogs and guardrails in appellant's railroad yards, was not the proximate cause of the injuries to respondent's husband.   Stepp v. Railroad, 85 Mo. 229; Mathiason v. Mayer, 90 Mo. 585; Kennedy v. Railroad, 70 Mo. 352; Rutledge v. Railroad, 110 Mo. 312; Henry v. Railroad, 76 Mo. 294; McGrath v. Transit Co., 197 Mo. 94; Warner v. Railroad, 178 Mo. 133; Epperson v. Telegraph Co., 155 Mo. 346; Evans & Howard Brick Co. v. Railroad, 17 Mo. App. 624; Hudson v. Railroad, 32 Mo. App. 667; Brown v. Railroad, 20 Mo. App. 222; Saxton v. Railroad, 98 Mo. App. 494; Breen v. Cooperage Co., 50 Mo. App. 202; Cothron v. Packing Co., 98 Mo. App. 349; Foley v. McMahon, 114 Mo. App. 442; Lawrence v. Ice Co., 119 Mo. App. 328; Moriarty v. S. & S. Co., 112 S. W. 1034; Hodges v. Railroad, 116 S. W. 1131; Glick v. Railway, 57 Mo. App. 97; Smart v. Kansas City, 91 Mo. App. 586; Bank v. Railroad, 40 Mo. App. 458; Bradford v. Railroad, 64 Mo. App. 475; Columbia v. Railroad, 69 Pac. 338; Huber v. Railroad, 92 Wis. 636; Block v. Railroad, 89 Wis. 378, 27 L. R. A. 365; Bliel

v. Railroad, 98 Mich. 228; Mauch v. Hartford, 87 N. W. 816; Bajus v. Railroad (N. Y.), 28 Am. and Eng. R. R. Cases, 499; Schwartzschild & S. Co. v. Weeks, 72 Kan. 190; Railroad v. Kelley, 91 Tenn. 704; Deming & Co. v. Cotton Press, 90 Tenn. 353; Ohl v. Bethlehem Township, 199 Pa. 588; Yoders v. Antwell Township, 172 Pa. 454; Hoag v. Railroad, 85 Pa. 293, 27 Am. Rep. 653; Railroad v. Sipes (Colo.), 55 Pac. 1093; Lining v. Railroad, 81 Iowa 246; Butcher v. Railroad, 37 West Va. 180; Railway v. Mutch (Ala.), 11 South. 894, 21 L. R. A. 316; Troy v. Railroad, 99 Conn. 306, 6 Am. St. Rep. 521; Isbell v. Railroad, 27 Conn. 406, 71 Am. Dec., 78; Smith v. Bank, 99 Mass. 605, 97 Am. Dec. 59; Searles v. Railroad, 101 N. Y. 61; Goodlander v. Standard Oil Co., 64 Fed. 400; Pierce v. Kile, 80 Fed. 865; Lindvall v. Woods, 44 Fed. 857; Railway Co. v. Kellogg, 94 U. S. 469; Scheffer v. Railroad, 105 U. S. 249; Insurance Co. v. Boon, 95 U. S. 130.   (2)   The rule *res ipsa loquitur*, has no application to the facts in this case, because, first: In this case, the facts are susceptible of direct and positive proof by living witnesses; and, second, The proof of the injury was as accessible to the plaintiff as to the defendant.   Klebe v. Distilling Co., 207 Mo. 480; Bowen v. Railroad, 95 Mo. 268; Oglesby v. Railway Co., 177 Mo. 272; Fuchs v. City of St. Louis, 167 Mo. 620; Bohn v. Railway Co., 106 Mo. 429; Ash v. Verlenden, 154 Pa. 246, 26 Atl. 374; Stackpole v. Wray, 77 N. Y. Supp. 633; Griffin v. Manice, 166 N. Y. 188; Searles v. Railway Co., 101 N. Y. 662; Dobbins v. Brown, 119 N. Y. 188; Starer v. Stern, 91 N. Y. Supp. 821; Mining Co. v. Kitts, 42 Mich. 35; Brownfield v. Railway Co., 107 Iowa 254; Lehman v. Plumbing Co. (Minn.), 116 N. W. 552; Tibbitts v. Railroad, 115 N. W. 1021; Moriarty v. S. & S. Co., 112 S. W. 1034; Coal Co. v. Jones (Ky.), 118 S. W. 342; Railroad v. Hill, 79 Ark. 80; Railway v. Harper, 44 Ark. 527; Railroad v. Gaines, 46 Ark. 555; Railroad v. Rice, 51 Ark. 467; Ross v. Cotton Mills, 140 N. C. 115; Peters v. Light Co. (Va.),

61 S. E. 745; Robinson v. Gas Co. (N. Y.), 86 N. E. 805; Patton v. Railway Co., 179 U. S. 658; Texas Pac. Ry. Co. v. Barrett, 166 U. S. 617; Shandrew v. Railroad, 142 Fed. 330. (3) It was incumbent upon respondent at the trial to establish by a preponderance of the evidence, the negligence of appellant and to show a causal connection between such negligence and the injuries that resulted in her husband's death. This she did not do, and it was error to refuse appellant's demurrer to her evidence. Rutledge v. Railroad, 110 Mo. 312; Hudson v. Railroad, 32 Mo. App. 667; Hodges v. Railroad, 116 S. W. 1131; Kearns v. Railway Co. (N. C.), 52 S. E. 131; Byrd v. Southern Express Co. (N. C.), 51 S. E. 851; Lumber Co. v. Mills (Ala.), 42 South. 1023; Car Wheel Co. v. Mehaffey, 128 Ala. 242; Railroad v. Quick, 125 Ala. 561; Richards v. Steel & Iron Co. (Ala.), 41 South. 288; O'Connor v. Railroad, 106 N. W. 161; Kennedy v. Navigation Co. (N. J.), 72 Atl. 382. And, while this causal connection may be shown either by direct or circumstantial evidence, it must be stronger than merely consistent with plaintiff's theory of how the accident occurred. If the proof is equally balanced, or, if the facts are as consistent with one theory as another, plaintiff can not recover. O'Connor v. Railroad, supra; McGrath v. Transit Co., 197 Mo. 97; Gettys v. Transit Co., 103 Mo. App. 564; Rissler v. Transit Co., 113 Mo. App. 120; Ries v. Transit Co., 179 Mo. 1; Moore v. Lindell Railway Co., 176 Mo. 528; Hawkins v. Railroad (Mo. App.), 116 S. W. loc. cit. 19; Bogan v. Railroad, 129 N. C. 154, 39 S. E. 808; Ashback v. Railroad, 74 Iowa 261, 37 N. W. 182; Wheelan v. Railroad, 85 Iowa 167, 52 N. W. 119; Rhines v. Railroad, 75 Iowa 597, 39 N. W. 912; Neal v. Railroad (Iowa), 105 N. W. 197; Tibbitts v. Railroad, 115 N. W. 1021; Lehman v. Plumbing Co., 116 N. W. 352; Koslowski v. Thayer, 66 Minn. 150, 68 N. W. 973; Sash & Door Co. v. Railway Co., 89 Minn. 143; Ulseth v. Lumber Co.,

97 Minn. 179; Stewart v. Carpet Co. (N. C.), 50 S. E. 562; Edgar v. Railway Co. (Utah), 90 Pac. 745; Fritz v. Electric Light Co., 18 Utah 493; Sorensen v. Paper Co., 56 Wis. 338; Deserant v. Coal R. Co., 55 Pac. 290; Shaw v. Gold Mining Co., 77 Pac. 575; Ryan v. Iron Works Co. (Mass.), 86 N. E. 310; Kennerson v. St. Ry. Co., 168 Mass. 1; Saxe v. Walworth Mfg. Co., 191 Mass. 338; Hill v. Sporting Goods Co., 188 Mass. 75; Flynn v. Beebe, 98 Mass. 575; Curtin v. Elevated Ry. Co., 194 Mass. 260; Thompson v. Fire Works Co., 195 Mass. 328; Hofnauer v. R. H. White Co., 186 Mass. 47; Childs v. Express Co., 197 Mass. 337; Railroad v. Cox's Adm'r (Ky.), 104 S. W. 956; Railroad v. Jolly's Adm'r (Ky.), 90 S. W. 977; Coal Co. v. Jones (Ky.), 118 S. W. 343. (4)    There was an entire failure of proof of the allegation that the injuries to respondent's husband were caused by his foot being caught in an unblocked guard-rail or frog.    On the contrary, the physical facts established upon the trial disprove the allegations of the petition in that respect, and it was error to refuse to direct a verdict for defendant.    Nugent v. Milling Co., 131 Mo. 256; Trigg v. Ozark Land & Lumber Co., 187 Mo. 227; Weltmer v. Bishop, 171 Mo. 116; Deane v. Transit Co., 91 S. W. 505; Hook v. Railroad, 162 Mo. 580; Wray v. Railroad, 68 Mo. App. 389; Baker v. Railroad, 122 Mo. 593; State v. Bryant, 102 Mo. 32; State v. Nelson, 118 Mo. 126; State v. Brown, 119 Mo. 538; Pickens v. Metropolitan Ry. Co., 103 S. W. 124; Payne v. Railroad, 136 Mo. 576; Spiro v. Transit Co., 102 Mo. App. 265; Gurley v. Railroad, 104 Mo. 211; Waters-Pierce Oil Co. v. Kinsel, 79 Ark. 608; Waters-Pierce Oil Co. v. Van Eldereen, 106 S. W. 947; Waters-Pierce Oil Co. v. Van Eldereen, 137 Fed. 567; Railroad v. Mogart (Ark.), 19 S. W. 751; Artz v. Railroad, 34 Iowa 152; Meyers v. Railroad, 24 Atl. 747; Blumenthal v. Railroad, 44 Atl. 750; Jeske v. Irvin, 44 S. W. 1062; Keller v. Railroad, 73 N. E. 965; Dolfini v. Railroad, 70 N. E. 69; McClintock v. Railroad, 6 Am. Neg. Cases,

228; Morland v. Railroad, 16 Atl. 623; Byersdorf v. Sash & Door Co., 84 N. W. 861; Mushbach v. Chair Co., 84 N. W. 39; Crawley v. Railroad, 77 N. W. 179; Badger v. Cotton Mills, 95 Wis. 599, 70 N. W. 687; Vorbrich v. Manufacturing Co., 96 Wis. 277, 71 N. W. 434; O'Brien v. Railroad, 102 Wis. 628, 78 N. W. 1084. (5) Respondent's husband was guilty of contributory negli-gence as a matter of law in needlessly going between the cars to uncouple them when he had a comparatively safe place to perform that duty by remaining on the out-side of the cars. Moore v. Railroad, 146 Mo. 572; Morris v. Railroad, 108 Fed. 747; Gilbert v. Railroad, 128 Fed. 529; Dawson v. Railroad, 114 Fed. 870; Railroad v. O'Shaughnessy, 122 Ind. 588; Lorange v. Railway Co. (Mich.), 62 N. W. 137; Coal Co. v. Hoodlet, 129 Ind. 327; Publishing Co. v. Beaumeister (Va.), 47 S. E. 821; Schoultz v. Eckard Co., 112 La. 568; Railroad v. Estes, 37 Kas. 715; Carrier v. Railroad, 61 Kas. 447; Haven v. Bridge Co., 151 Pa. 620; Quirouet v. Ala., etc., Co., 111 Ga. 315; Railroad v. Hamlin (Ind.), 83 N. E. 343; Thompson on Neg., sec. 5372.

*N. A. Mozley* for respondent.

GOODE, J.—Plaintiff's former husband was killed by one or two of defendant's freight cars running over him on January 10, 1903. The deceased was then and had been for four or five months a switchman in defend-ant's railroad yards in the city of Cape Girardeau, and it was part of his duty to couple and uncouple cars while trains were being made up or changed on the tracks in the yards. In the performance of this duty he attempted to uncouple two freight cars from a train of eleven cars which was in backward motion at the rate of four to six miles an hour, and held together by coup-lers with lever attachments that could be reached by an employee and manipulated so as to uncouple cars with-out going between them, as the lever extended to within

three or four inches of the outer edge of the car it was on. Those cars were in motion and the evidence tends to show plaintiff walked from six feet to twenty yards by the side of the cars with his left hand on the lever, before going between them, then caught hold of a hand-hold and stepped or jumped on the brake beam of the front car. His feet slipped from the beam and he walked a few steps, or, as one witness said, "trotted," following the front car, when he sank down or was jerked down, fell across the guardrail or frog and the car in the rear ran over his left foot and thigh, crushing his arm and left thigh and injuring his hand and left foot, so he died in a few hours. A fellow employee (White) who was near deceased and saw his peril, shouted a warning to him that he would run into the frog or guard-rail. This man was the one who saw most of the tragedy and was introduced by plaintiff. Among other things he testified it was unnecessary for deceased to go between the cars to uncouple them with the lever, and deceased was not in the line of duty when he went between them. This witness, who was in authority over deceased, was ten or fifteen feet away and thus described the accident:

"We was at the south of what we call the track lead, and was backing toward track No. 7, that crossed this Gulf track, and Jase was standing there, and I told him to cut off two cars and he caught hold of the lever and run along five or six feet, and dropped the lever and caught hold of the hand hold, and put his feet on the brake beam and his foot slipped off the brake beam. And I says 'Look out Jase, you will get your feet in that frog,' and he was trying to get his feet away from the wheels, and he fell kinder on his hands and knees; and I saw the wheels was going to run over him and I turned around.

"Q. Did he take any steps after his feet slipped off the brake beam? A. It looked like he went four or five feet with his right foot wobbling along the ground

or rail, trying to get his feet away from the wheels."

One witness said just before deceased slipped off the brake beam, he "had his left hand a hold of the pin lifting rod to cut the cars, and had the right hand upon the grip iron." The accident occurred in daylight at the intersection of two tracks, where there are what are termed "frogs" at the junction of the rails and a guardrail running parallel to the outside rail. This guardrail is sometimes called a frog," too, though technically a frog is a different contrivance. The guard-rails are probably twelve or fourteen feet long and placed by the side of the main outside rails of the track, with a space two and one-half to four inches wide between the two for the flange of the car wheels to run in. Each end of the guardrails is flared so as to make the distance between it and the outside rail wider at the ends for a foot or a foot and one-half than is the space between the two rails where they run parallel to each other. When help reached deceased he was lying across the rails with his head and feet west of the west rail. His left shoe had two streaks of rust about three inches long, three-quarters of an inch above the sole and on either side. There was also a crease on the inside edge of the sole under the instep and "the spur piece was cupped up." Another witness said the sole was cupped and torn loose at the heel from the upper, and the marks on the upper were like they had been made by the balls of the rails. Witnesses differed as to the injury to the foot. Plaintiff swore it was mashed as flat as her hand, and another witness said it was mashed in at the instep; but the doctors said there was only a hole one could stick a finger in on top of the foot behind the third toe and reaching to the bone. The theory of plaintiff's case is that her husband, after his foot slipped off the brake beam and while he was walking along the track, struck the toe of his left shoe between the guardrail and the main rail and it hung there, causing him to be jerked down as the car he was holding to moved on, and the car

behind immediately ran over him.  The space between the guard and the main rail was not blocked as the statute required, and this neglect is the main complaint of the petition, it being alleged deceased's left foot caught in said space.  In defense, a general denial was pleaded; also negligence on the part of deceased which contributed to his injury, in carelessly, unnecessarily and against defendant's rule, stepping and walking between the cars while they were moving from four to six miles an hour, and carelessly permitting his foot to strike against the end of the guardrail.  The cars deceased was working with were moving southward at the time on the west track of defendant's right of way, and at the instant he fell or was jerked down, he was walking with both feet between the rails of the track, or with his right foot on the ties on the outside of the west rail and his left foot inside the west rail; the testimony would support a finding either way.  No witness testified positively the deceased caught his foot between the guardrail and the main rail and was thereby thrown down, but circumstances are relied on to prove he did. It is the contention of defendant his foot did not catch, but when his feet slipped off the brake beam, he followed the front car, still clutching the handrail, until he stumbled from striking his foot against the end of the guardrail.  A more accurate statement of the position of defendant's counsel in this connection is, there was nothing in the evidence tending to prove deceased was run over in consequence of his foot hanging in the guardrail.  It is their further contention it was a negligent act to go between the cars to uncouple them, inasmuch as this could be done by manipulating the lever from without and the cars were constructed in that manner to enable employees to couple them from the outside; further, that said act of negligence contributed to cause the casualty.  Several witnesses gave testimony conducing to prove deceased did not catch his foot in the open

frog, but fell from slipping off the brake beam while he was standing on it, or as he endeavored to jump on it.

Perhaps some other facts would better be stated or items of testimony as given by the witnesses. A witness for plaintiff (Buckner) said deceased was running along between the cars, and "all at once he went down, right down under the wheels like something had jerked him—went right down that quick" (indicating). Witness saw him take hold of the lever as if to cut off a car. Deceased was between the cars when he saw him take hold of the lever and he ran along, witness supposed, for twenty yards after he had taken hold of the lever before he fell down; that he had hold of the lever. It is to be noted this witness and all the others but White testified to nothing going to show deceased endeavored to manipulate the lever of the safety coupler, except the statement about his walking or running by the side of the cars with his hand on it. At one place in his testimony White said, when asked how far deceased had gone before he got on the brake beam: "I couldn't say; seven or eight feet he run along there holding the lever up." Again White said deceased walked by the side of the cars "from seven to ten feet or somewhere along there." Buckner was standing about forty feet from the deceased; White was standing nearer. Besides portions of his testimony copied supra, the latter said: the cars were running five or six miles an hour when deceased went between them and put his feet on the brake beam; that deceased went but a few feet before falling after his feet slipped off the brake beam; that it was not necessary for him to go in there at all. When asked if the incidents he had detailed "occurred in almost an instant's time," he answered: "Yes, sir, a short space of time." Another witness who testified for defendant said:

"Q. Were you present when the accident happened? A. I was off at a very little distance, and saw the accident.

"Q. State in your own way what happened there, exactly? A. Well, Mr. Brannock was a switchman, as I understand what he was doing, and they were kicking two box cars on the side track and Mr. Brannock had hold of the pin lift rod to make the uncoupling with his left hand, and right hand hold of the grip iron on the end of the car; and he went to place his left foot upon the brake beam, and his foot slipped off; and it seemed to me when his foot slipped off he lost control of his wits, and let loose of the iron grip round, and fell directly there over the railroad track with his left leg across the rail, . . . the train was going south."

Said witness stated a brakeman would not necessarily have to go between the cars in order to uncouple them, as there was a lever to use which rendered it unnecessary to go between the rails; that after the feet of deceased slipped off the beam he did not take a step; that there was a grip iron at the end of the car eighteen to twenty inches long "intended for the protection of switchmen and brakemen to hold to." Another witness said he did not see Brannock get hold of the car, but saw his foot on the brake beam and "it looked like it slipped off as he put it on and the wheels struck him; I was standing to the east side of the track and across the track." This witness saw Brannock jump on the brake beam and said it looked like his foot slipped and he went under the wheels. The physician who attended deceased testified the latter stated to him while in the hospital "that he (Brannock) had slipped off the beam." A witness testified the accident occurred about four-thirty in the afternoon, when there was good daylight. The unblocked places between the main rails and the guardrails at the intersection of the tracks had been as they were throughout the period deceased had worked in the yards.

The main instruction for plaintiff, and the only one given at her request, except those on the measure of damages, told the jury, in effect, if they found her hus-

band was in defendant's employ as a brakeman, and in the course of his employment was engaged in switching, coupling and uncoupling cars in the railroad yards of defendant, and while so engaged at the intersection of the track of defendant with another track, "his foot became caught and fastened between the rails of a frog, or between the main rail and a guardrail, which were not at said time blocked or filled in such a way as would prevent, as far as possible, the foot of a person from becoming caught or fastened, and by reason thereof, the foot of said Jason W. Brannock was so caught, and he was run upon and over by the wheels of defendant's car, and soon thereafter died as a result of the injuries thus received, they will find the issue for the plaintiff." Many instructions were given at the instance of defendant. The jury were told if they found defendant negligently failed to block the guardrails and frogs in the vicinity where Brannock was injured, yet if they further found the guardrails and frogs where he worked were unblocked, and that condition existed at the time he entered defendant's employ, then he assumed the risk incident to his employment and the verdict must be for defendant, though his foot was caught in the unblocked guardrail; that though the jury found his foot was caught in the unblocked guardrail, yet if they found he negligently went between the cars and carelessly and negligently walked between the same, the verdict must be for defendant; if the jury found he stepped between moving cars and attempted to jump on the brake beam and his foot slipped, the verdict must be for defendant, even though his foot caught in the unblocked guardrail; if the jury found it was unnecessary for Brannock to go between the cars moving at the speed they were, he was guilty of contributory negligence and the verdict must be for defendant; that if it was against the rules and regulations of the company for Brannock to go between the cars, the verdict must be for defendant, even though his foot caught in an unblocked guard-

rail. Other instructions of a similar tenor were given at defendant's instance.

Some circumstances which would throw light on the casualty and assist in reaching a right conclusion are not in proof. No testimony was introduced as to the condition of the coupling appliance, whether it was in good or bad repair, rusty or worked freely, how long it commonly takes to lift a coupling pin by a lever when the appliance is in good order, and what is a reasonable effort to lift it by the lever. We disposed of the case at first on the assumption the safety coupler was in good order, because the abstracts of the record on which the case was submitted showed plaintiff's counsel induced the court to exclude evidence offered by defendant's counsel tending to prove its condition. A motion for rehearing was filed and counsel agreed this was an erroneous recital in the abstract, that no such evidence was offered at the trial, the mistake was due to evidence having been offered at the first trial and excluded, and in making up the present abstract, by inadvertence the offer and ruling were shown as though they occurred at the second trial. The court below instructed the jury against a verdict for plaintiff if deceased went between the moving cars in violation of a regulation of defendant, but evidence of what the rules were was rejected, because defendant offered secondary evidence; hence this instruction related to a question on which there was no evidence. If there were rules on the subject, likely they were relevant to the issues. Neither was any testimony put in about whether there was a custom at the yards for employees of defendant to go between moving cars to couple or uncouple them when the safety coupler failed to work, what the brake beam was, how it was contrived, whether it was a safe place for a brakeman to place himself, the usage of employees to get on it, and defendant's knowledge of the usage. The case would have been clearer if it had been more

fully developed, but we must dispose of the appeal as best we may on the record presented.

The evidence, especially that as to the creases, bends and general condition of the shoe of deceased, pointed directly enough to the conclusion that his foot caught between the main and the guardrail, to remit the issue to the jury for a finding, and we overrule the contention to the contrary.

A more perplexing problem is whether the facts in proof so plainly demonstrated contributory negligence on the part of the deceased that the court should have directed a verdict for defendant. The action was brought and first tried on the supposition that such a defense could not be pleaded in a case founded on a violation of the statute requiring railway companies to block frogs and guardrails, and the portion of the answer pleading the defense was struck out. But on the appeal the Supreme Court held this was error and rejected as unconstitutional the clause of the statute which declared the defense incompetent; declining, however, to pass on any other question than the error assigned on the trial court's ruling. in striking out the portion of the answer wherein contributory negligence was pleaded. [Brannock v. Railroad, 200 Mo. 561, 98 S. W. 604.] Many cases more or less resembling this one have been cited by counsel on the question of whether the court should have taken the issue of contributory negligence from the jury. We have read them all and will say something of their bearing before dealing with the point on the facts in proof. Some of them cannot influence our decision because they were determined by a rule of law not accepted in this State in such cases; the decisions having been against recovery, rather because the injured person was held to have assumed the risk of working about unblocked frogs or guardrails, than because of his contributory negligence. [Denver, etc., R. R. v. Arrighi, 129 Fed. 347; Wood v. Locke, 148 Mass. 504; Gillin v. Railroad, 16 Am. and Eng. R. R.

Cases, 508; St. L., etc., R. R. v. Hynson, 101 Tex. 543, 109 S. W. 929; Appell, Admx., v. Railroad, 111 N. Y. 550.] Defendant company's omission to block its guardrails was a violation of a statute of the state and negligent conduct. [R. S. 1899, sections 1123-1125; Stafford v. Adams, 113 Mo. App. 717, 88 S. W. 1130; Colliott v. Mfg. Co., 71 Mo. App. 171; Lore v. Mfg. Co., 160 Mo. 608, 622, 61 S. W. 678.] In Missouri an employee does not assume risks incident to the negligence of his employer (Curtis v. McNair, 173 Mo. 270) and for a stronger reason does not assume the risk of working about devices which the employer has not safeguarded as required by statute, even though the employee is aware of their condition. [Cases supra; Durant v. Mining Co., 97 Mo. 62, 10 S. W. 484; Bair v. Heibel, 103 Mo. App. 621, 77 S. W. 1017; Nairn v. Biscuit Co., 120 Mo. App. 144, 96 S. W. 679; McGinnis v. Printing Co., 122 Mo. App. 227, 232, 94 S. W. 4.]

In other cases cited for defendant, and particularly those from Federal courts, verdicts for plaintiffs were set aside on the ground the injured employees were shown conclusively to have been guilty of negligence contributing to cause the accident, when, as we think, the evidence on that issue would have been left to the jury if the decisions of the appellate tribunals of this State had controlled. Nevertheless those opinions are instructive and have shed light on the question we are to decide; for they proceeded on the theory that the true inquiry was whether the employee had needlessly exposed himself to danger. [Grand v. Railroad, 83 Mich. 564; Morris v. Id., 108 Fed. 747; Dawson v. Id., 114 Fed. 870; Gilbert v. Railroad, 128 Fed. 529; Riley v. Id., 133 Fed. 904; Suttle v. Id., 144 Fed. 668; Powell v. Id., 159 Fed. 864.]

Still others of the cited cases differ from this one in material facts. [Hamilton v. Mining Co., 108 Mo. 364, 18 S. W. 977; Hollenbeck v. Railroad, 141 Mo. 97, 38 S. W. 723, 41 S. W. 887; Lee v. Railroad, 195 Mo. 400,

92 S. W. 614; Brady v. Id., 206 Mo. 509, 102 S. W. 978, 105 S. W. 1195; Ashman v. Id., 90 Mich. 567.] In the first three of those cases, wherein our Supreme Court held the issues of the defendant's negligence and the injured parties' contributory negligence were for the jury, there was no safety coupler attached to the cars worked with, and the evidence went to prove it was necessary for the injured employee to go between them while they were moving, and in two of them a rule of the company was introduced, which authorized employees to go between moving cars to couple and uncouple, if their speed was slow and safe. [Hollenbeck v. Railroad, Lee v. Id., supra.] In the Brady case a safety coupler was attached to the cars and after a futile effort to work it, a brakeman went in to take out the coupling pin with his hand; while he was between them another employee uncoupled the cars by a lever on the opposite side from where the brakeman entered, thus letting them part and injuring the brakeman. That was not a case of injury by an unblocked guardrail; a usage of the employees, acquiesced in by the company, authorized them to go between cars when the automatic coupler failed to work, and it was held the employee who parted the cars suddenly could have known by proper care the perilous position of the brakeman between them. In the Michigan case the plaintiff was injured by his foot catching in a frog while he was between cars, endeavoring to extract a coupling pin. He had no safety lever to use and was bound to go between to extract the pin. The evidence showed no rule of the company forbade this, but, on the contrary, that it was customary for employees to do so in the presence of their superiors. In Towner v. Railroad, 52 Mo. App. 648, the rules of the defendant had been violated in passing between the cars, a fact noticed in Hollenbeck v. Railroad, as influential in leading to the result reached. In Montgomery v. Railroad, 109 Mo. App. 88, 83 S. W. 66, the plaintiff, for his own conven-

ience and not to perform a task, having already performed it, took a position of extra hazard.

The authorities appealed to by counsel as supporting their respective positions not being exactly in point, we must reason on the facts before us in the light of general principles. The prevalent rule is, that an employee who goes between moving cars joined by link and pin, to couple or uncouple them, is not necessarily guilty of negligence as a court matter. [1 Labatt, Master & Servant, section 855; 5 Thompson, Negligence, section 5595 and cases cited in notes to texts.] We have found no Missouri cases where the rule was declared, but several where it must have been taken for granted. [Hollenbeck v. Railroad, 141 Mo. supra.] Whether such an act is negligent or not, depends on its coincidents, especially the speed of the cars; and probably there would be no legal conclusion of negligence if the speed was not more than four to six miles an hour, the rate of motion of the cars deceased attempted to cut. The aspect of the question is altered when some device like a coupling stick, has been provided to enable cars to be cut or coupled without taking the risk of entering between them, and a rule prescribed forbidding the latter method. In such a case an employee who, in violation of the rule, resorts to the more dangerous method, instead of the safer one, is justly denied recovery. [Schaub v. Railroad, 106 Mo. 74, 16 S. W. 924; Francis v. Id., 110 Mo. 387, 19 S. W. 935; 5 Thompson, Negligence, sections 5583, 5585.] But if a condition arises which prevents the use of the safer method and an employee goes between the cars, the propriety of the act ought to be determined according to the principles which would apply if no safety device had been furnished, and courts have held it will be. [Citations in 5 Thompson, section 5585.] Beyond doubt if an automatic safety coupler designed to protect train crews from the hazards of coupling and parting cars by the old method has been provided by a railway company, and especially when

the equipment is exacted by legislation, it becomes the duty of crew-men to use the device, instead of exposing themselves to injury by the more dangerous mode when it is unnecessary to do so. Hence if it conclusively appeared deceased preferred to pass between the cars though he might have cut them from the outside by a proper effort, on no just theory could plaintiff be awarded damages for his death. [Pearson v. Railroad, 127 Ia. 13, 18; Atchison, etc., R. R. v. Rudolph, 78 Kas. 695; Gilbert v. Railroad, 129 Fed. 529.] Doubtless emergencies occur which call upon a trainman to cut or couple cars by the old method when the cars are equipped with automatic apparatus for the purpose, and consequently render the act not negligent in law, or, perhaps, at all; just as emergencies occur which warrant a brakeman to couple with his hand instead of a stick furnished for the purpose, and in disregard of a rule against going between moving cars, unless the rule purports to be imperative under all circumstances and no usage, acquiesced in by the company, justified its violation in the given contingency. If after a fair effort, the circumstances considered, to lift the coupling pin with a lever, Brannock could not do so, and there was not a rule prescribed and enforced by the defendant against his going between the cars to perform the task, and the danger of doing so was not so great, in consequence of the speed of the car or other immediate facts, as to have caused a railway man of ordinary skill and prudence to await a more favorable opportunity, then deceased did not commit a negligent act in going between. [Riffley v. Railroad, 72 Minn. 469.] As to whether the further act of getting on the brake beam was careless, depends on circumstances of which the record does not apprise us, such as the construction of the beam, the usage of railway men and possible rules of the defendant. The problem before us finally comes down to the inquiry often presented in cases involving the defense of contributory negligence; *i. e.*, whether it con-

clusively appeared deceased put himself in a place of extra hazard when no sufficient emergency justified the risk, either because his conduct was absolutely forbidden by defendant, or would have been declined by a prudent employee if not forbidden, or whether there was doubt about those matters for the jury to solve. Counsel for plaintiff argue there is presumed to have been a necessity to do as deceased did, because, as defendant invoked the defense of contributory negligence, the burden of proof rested on it to establish the defense prima facie, and plaintiff might lean on the presumption that her husband was acting with care when he lost his life. An answer to this argument of counsel is, their own witness said deceased went between the cars unnecessarily and outside the line of his duty; and though, for a reason assigned infra, we hold that statement was not conclusive against plaintiff, it was relevant evidence for the jury and sufficed to eliminate the presumption, were it otherwise controlling. [Higgins v. Railroad, 197 Mo. 300, 317, 95 S. W. 863.] In view of said testimony no presumption would be indulged; for when there is evidence on an issue of fact the truth is to be found from the evidence and not presumed to be so and so, as is done in the absence of evidence. [Higgins v. Railroad, supra.]

The next inquiry is, did plaintiff introduce evidence which sufficed to send the issue to the jury? In our first opinion we answered this question in the negative in consequence of taking for granted the safety coupler was in good working order, because plaintiff's counsel appeared to have prevented the reception of evidence offered to prove it was. As said supra, the record on which the appeal was submitted was incorrect in so stating, and correcting the mistake has taken away a circumstance very adverse to plaintiff's case. Plaintiff ought not to be concluded by White's testimony that it was unnecessary for deceased to go between the cars; for though he was her witness, that remark was an

opinion on the issue to be tried, rather than the statement of a fact; and, moreover, the testimony of a witness introduced by a party is not conclusive against the party if there is countervailing evidence, or for any reason the jury has the right to believe the contrary. [Brown v. Wood, 19 Mo. 475; Meyer Bros. Drug Co. v. McMahon, 50 Mo. App. 18.] The testimony of White that deceased walked by the car seven or eight feet, holding up the lever, unquestionably conduced to prove he attempted to lift the pin by the lever. This was the only positive testimony deceased lifted on the lever, as the other witnesses only said he held his hand on it. The point of difficulty in this connection is not whether there was evidence Brannock endeavored to lift the pin by the lever, but whether there was substantial evidence tending to prove the attempt was adequate, and such as a careful employee would have been satisfied with before taking the risk of entering between the cars. Holding up the lever while walking seven or eight feet, to keep up with cars moving from four to six miles an hour, or as fast as a person would travel in a rapid walk, was but a brief effort to lift the pin, the success of which might have been prevented by a tautness or twist of the cars, a curve in the track, or other impediment the progress of the cars would have obviated in a moment or two. We incline to think this testimony from White was not substantial proof of a reasonable effort to manipulate the lever. But another witness (Buckner) said Brannock walked by the cars for twenty yards with his hand on the lever. It is true the witness said Brannock went between before taking hold of the lever; but possibly Buckner was mistaken about the latter circumstance and right about the distance Brannock walked with his hand on the lever, and he may have been endeavoring over said distance to cut the cars by the lever. Moreover, that he was intent on the purpose to cut them appears from his being seen as he stepped

Brannock v. Railroad.

on the brake beam grasping a handhold with one hand, with the other placed on the coupling pin. We think there was substantial proof he made a reasonable effort to cut the cars from the outside before facing the hazard of going between, though aware other courts, which maybe are more expert than we are in what constitutes careful railroading, have given decisions that are authority for the contrary ruling. Our conclusion is in harmony with the opinion given by the Supreme Court of Iowa on quite similar facts, in Pearson v. Railroad, 127 Ia. 13, a case from which our Supreme Court, in Brady v. Railroad, supra, quoted with approval a passage wherein the reasoning of the Federal courts in the, Morris and Gilbert cases, supra, was rejected. See, too, Riffley v. Railroad, 72 Minn. 469.

If the triers of the fact should find deceased was warranted to go between the cars, there remains the further question of whether he was warranted to take the risk of stepping on the brake beam. In other words, whether, all his acts and the situation and conditions considered, he exercised ordinary care. Thus much concerning the demand for a nonsuit.

We are urged to declare that even if deceased was careless, his carelessness did not contribute to the tragedy, because the unblocked space intervened and became the proximate cause of it. The evidence is uniform that the entrance of deceased between the cars and his stumble and fall, happened in a second or two, and we think if it be found he negligently, that is, without reasonable necessity, went between, or negligently stepped on the brake beam, his conduct must be treated as a concurrent cause with defendant's. So the immediate point was ruled on satisfactory reasoning and similar facts in the Morris, Gilbert and other cases, supra. In Lake Erie, etc., Co. v. Craig, the question whether a trainman who was injured by catching his foot in an open frog, had proximately contributed to the accident by needlessly going between cars, was ruled to be for

the jury on the ground that if he went between care-
lessly, nevertheless he did not take the risk of injury
from the frog, because he had no notice, actual or con-
structive, it was open, hence might count on the railway
company having complied with its duty to block it.   In
Gleason v. Railroad, 73 Fed. 647, the same court non-
suited a plaintiff who had carelessly gone between cars
and then stumbled over an impediment of a kind he was
bound to anticipate, holding the employee's negligence
was the proximate cause of his hurt.   The Craig case
is to be distinguished from this one, for Brannock must
have known the condition of the tracks in the yard and
the risk of getting his foot caught between unblocked
rails, he having worked there for months.   If he forgot
the fact at the time, his forgetfulness will not take away
the negligent quality of his conduct if he went between
the cars without good reason to do so.   Danger was to
be apprehended from such a step, and this is the cir-
cumstance essential to connect a careless act with its
consequence, as proximate cause of the latter; not an-
ticipation of the very source of danger which existed.
[Brady v. Railroad, 206 Mo. loc. cit. 537; 1 Sher. and
Redf., Negligence (5 Ed.), sec. 29.]   But ability to an-
ticipate by ordinary forethought that harm is likely to
result from the wrongful conduct of another, if one
does a given careless act, is material on the question
of whether said act is superseded as proximate cause of
the ensuing harm.   If the act of carelessness is per-
formed knowing, or with good reason to know, it ex-
poses the actor to injury from another's tort, and injury
follows, the first carelessness remains a concurrent and
proximate cause.   [1 Sher. & Redf., sec. 34.]   If a man
should carelessly walk along a highway when he sees
another man is about tortiously to shoot across it, and
while thus walking into danger is wounded, he would
be regarded as having contributed proximately to the
injury.   Brannock knew of the open guardrail and its

dangers, and if he needlessly incurred them, he induced his own death.

The main instruction for plaintiff was erroneous because it omitted from consideration the defense of contributory negligence, and some of the instructions for defendant were too favorable.

The judgment is reversed and the cause remanded. All concur.