WILLIAM STACK v. GENERAL BAKING COMPANY and GEORGE H. KELLER, Appellants.

Division Two, June 25, 1920.

1. **COLLISION: Speed: Physical Facts: Demurrer.** Where two witnesses testified that the automobile was traveling at a speed of eight to ten miles an hour and the horse to the wagon which it met was traveling in a trot, it cannot be conclusively held, from the physical facts that the two vehicles headed together sideways, that the automobile was turned upside down, that the wagon was turned over and that the shaft and horse's leg were broken, that the speed of the automobile was dangerously and negligently high, but the question was one for the jury.

Stack v. General Baking Co.

2. ———: **Wrong Side of Street: Physical Facts.** The fact that the left hind leg of the horse and the left shaft of the wagon were broken, the left front hub of the wagon was struck, the spokes in the left front wheel of the wagon were broken, and several other physical facts in this case, corroborate the testimony of the witnesses that the automobile was traveling on the right-hand side of the street, and contradict the testimony of the driver of the wagon going in the opposite direction, that his wagon was not on the same side.

3. ———: **Unreasonable Ordinance: As Near Curb as Possible.** An ordinance requiring that "a vehicle, except when passing a vehicle ahead, shall keep as near the right-hand curb as possible," if given a literal construction, would be absurd and void for unreasonableness. But the rule is that an ordinance is to be given a reasonable construction when such construction is possible, and that its naked letter must give way to its obvious intendment; and the intention of this ordinance was to require vehicles to keep well to the right side of the street, so that other vehicles approaching from behind would have room to pass without crossing to the left side. And it is for the jury to say whether, under the circumstances, the driver of an automobile on the right side of the street, was negligent, when, according to his own evidence, he could have driven nearer the curb and thereby have avoided a collision with a wagon driving in the opposite direction on the same side; and an instruction which required him to drive his automobile "as close to the curb as was reasonably possible" meets the intendment of the ordinance.

4. ———: **Turning to Left: Emergency: Contributory Negligence.** An error of judgment in seeking to escape injury in a sudden emergency is not contributory negligence which would prevent recovery, although it contributes directly to the injury. Where the statute required the driver of a motor vehicle whenever he should meet another person to "seasonably turn the same to the right of the center of such highway so as to pass without interference," and the driver of an automobile, though he turned to the left, was still to the right of the center of the street at the time of the collision with a wagon driving on the same side in the opposite direction, his sudden turning to the left in order to avoid the collision did not as a matter of law prevent recovery.

5. ———: **Automobile: Driven by Unlicensed Chauffeur.** When a person is negligently injured by another, although he may be doing some act in violation of a statute or ordinance at the time, such violation will not prevent his recovery for the injuries received, unless it contributed to his injury. If the driver of an automobile on a public street had no license as a chauffeur from

the Secretary of State and was negligently injured by the driver of a wagon in the opposite direction on the same side of the street, his right to recover for his injuries is not barred by the fact that he had no license, unless his failure to obtain license contributed to his injury.

6. ———: ———: ———: **Trespasser.** By the word "chauffeur" used in the statute which forbids a person "to operate a motor vehicle as a chauffeur" without a license, is meant a person who operates an automobile for hire; and if the driver of the automobile had paid the usual registration fee and obtained a license number for his car, and at the time of his injury was not operating it for hire, he was not a trespasser on the street; but even though it be conceded that he was violating the law by merely driving on the public street without a chauffeur's license, yet if there was no causal connection between the absence of a registration certificate and the collision of his automobile with a wagon, and the collision would have occurred just as it did had he had a license, he cannot be denied recovery for the injuries negligently inflicted upon him by the driver of the wagon. [Reviewing the authorities, and refusing to follow the Massachusetts rule.]

7. **EVIDENCE: Impeachment of Witness: By Record of Conviction: Identity of Names.** Where the witness in the civil case, on cross-examination, has denied that he was the man by the same name convicted of petit larceny in a criminal case, the record of the conviction cannot be introduced in evidence for the purpose of impeachment, on the presumption of identity of names, unless further evidence is offered to prove that the witness and the person so convicted were one and the same person.

8. ———: **Presumption: Identity of Names.** The expression sometimes found in decisions that identity of name is prima-facie evidence of identity of person is unfortunate and misleading. It is more properly designated as pure presumption, and must be classified with other rebuttable presumptions, and the same rule applied to it that is applied to other presumptions, which is that when evidence is offered to contradict it, it no longer is a presumption and the jury it not entitled to consider it, and it is not to be submitted to them upon an issue of fact. When the witness, on cross-examination, has denied that he is the person of the same name who was convicted of petit larceny, and no evidence is offered to show that he was the person so convicted, the record of the conviction cannot be offered in evidence for the purpose of impeachment, on the theory that identity of person arises from identity of name; for that is a mere presumption, and having been rebutted by evidence the presumption no longer exists.

9. **INSTRUCTION: Covering Entire Case: Non-Direction: Contributory Negligence.** A mere omission which means nothing more than a non-direction from an instruction given for plaintiff will not amount to reversible error. Where plaintiff's instruction omits some feature which is not essential to his cause of action, but is essential to the defense pleaded, the omission may be cured by instructions for defendant submitting the feature. And the rule applies to contributory negligence pleaded as a defense.

Appeal from St. Louis City Circuit Court.—*Hon. Charles B. Davis,* Judge.

Affirmed.

*Watts, Gentry & Lee* and *Jones, Hocker, Sullivan & Angert* for appellants.

(1) The court erred in overruling the demurrers to the evidence offered at the close of plaintiff's case and again at the close of all the evidence in the case: (a) The physical facts, as testified to by plaintiff and his own witnesses, and as admitted by counsel for plaintiff, show that the accident could not have happened as claimed by plaintiff. Where testimony by a plaintiff or his witnesses is entirely contrary to the physical facts and contrary to all human experience, such testimony should be disregarded and a demurrer to the evidence should be sustained. Hayden v. Railroad, 124 Mo. 566; Kelsey v. Railroad, 129 Mo. 362; Huggart v. Railroad, 134 Mo. 679; Payne v. Railroad, 136 Mo. 579; Petty v. Railroad, 179 Mo. 666; Weltmer v. Bishop, 171 Mo. 116; Champagne v. Hornbey, 189 Mo. 726; Nugent v. Milling Co., 131 Mo. 241; Deane v. Transit Co., 192 Mo. 575; Lange v. Railroad, 151 Mo. App. 500. (b) The plaintiff himself was guilty of contributory negligence in driving at an excessive rate of speed and in violating an ordinance pleaded and proven by plaintiff himself, requiring all vehicles to keep as near the right-hand curb of the street as possible. (c) Plaintiff was further negligent in violating the statute requiring him to turn to the right, for he turned to the left. Lloyd v. Calhoun, 48 Wash. 438,

82 Wash. 35; Laws 1911, p. 327, sec. 8, subd. 3. (d) The plaintiff had no right whatever to be upon the street with his automobile under the circumstances revealed by his own evidence, because the statute prohibits any chauffeur driving an automobile for hire to operate such automobile upon any public highway in this State without complying with the sections of the statute found in the Act of 1911 (in force at the time of this accident), requiring every chauffeur to file an affidavit with the Secretary of State, pay a fee, procure a chauffeur's license and wear a badge issued by the Secretary of State. The plaintiff admitted that he had done none of these things, and that he was driving the car for hire; hence, he was a chauffeur within the meaning of the statute, and having no license, he had no rights upon the street. Under such circumstances the rule is the same as pertains to the rights of a trespasser. He is not entitled to recover damages for injury resulting from mere negligence, and one who injures him could not be held liable in the absence of malice, or at best, in the absence of evidence showing that after the trespasser's position of peril was discovered there was full opportunity to avoid injuring him. Laws 1911, sec. 11, subd. 4, p. 328. The principle is similar to that which precludes a foreign corporation from recovering in an action for goods sold in this State, or on account of other business transacted here when it had failed to comply with our statutes requiring foreign corporations to be licensed to do business in Missouri. States ex rel. Hays v. Robertson, 271 Mo. 475; Holden v. McGillicuddy, 215 Mass. 563; Dudley v. Northampton St. Ry. Co., 202 Mass. 443; Dean v. Boston Ry. Co., 217 Mass. 495. The rule applied to trespassers and bare licensees in this State is that no duty is owed them until their presence is known, and then the only duty is not to willfully or wantonly injure them. Kelly v. Benas, 217 Mo. 1; Frye v. Ry. Co., 200 Mo. 377. (2) The court erred in excluding all of the certified copies of the records of the Court of Criminal Correction of St. Louis, showing that James Carroll had been convicted of various offenses. Sec. 6383, R. S. 1909.

Proof of identity of name makes a prima-facie case of identity of person, and the burden is then shifted to the opposite party to prove lack of identity. The mere fact that there may have been several persons named James Carroll in St. Louis does not alter the rule. It has been applied in cases of very common names, such as Lee Woods, Michael McGuire and John Smith. Flournoy v. Warden, 17 Mo. 435; Gitt v. Watson, 18 Mo. 274; State v. Forsha, 190 Mo. 296; State v. Blitz, 171 Mo. 530; State v. Woodward, 191 Mo. 617; State v. Sovern, 225 Mo. 591; State v. Woods, 274 Mo. 617; State v. McGuire, 87 Mo. 642. A prima-facie case being made as to identity of person by proving identity of name, no amount of oral testimony by the other side, whether in the form of denial by the witness or testimony by other persons, can deprive the party seeking to show identity of the right to have that question submitted to the jury. It is like any other prima-facie case. Once established, no amount of oral testimony prevents the submission of it to the jury. Gannon v. Gas Light Co., 145 Mo. 502; Wilson v. Rutherford, 69 Mo. App. 304; Keiley v. Knights of Father Matthew, 179 Mo. App. 608; Johnson v. Grayson, 230 Mo. 380; State v. Fredericki, 269 Mo. 689. This is the rule, independent of any statute, and Sec. 6383, R. S. 1909 makes our contention absolutely unanswerable. (3) Instruction No. 1, given at the request of plaintiff, was erroneous in that, whilst undertaking to cover the entire case and all the issues embraced therein, including defense of contributory negligence, it entirely omitted reference to two specifications of contributory negligence which were material issues in the case. This has often been held to be error, and the mere fact that such defenses were submitted in a separate instruction does not cure the error. Bellows v. Travelers Ins. Co., 203 S. W. 978; Riegel v. Biscuit Co., 169 Mo. App. 513; Ross v. Met. St. Ry. Co., 132 Mo. App. 472; Payne v. C. & A. Ry. Co., 129 Mo. 405; State ex rel. Long v. Ellison, 272 Mo. 571; Hall v. Coal & Coke Co., 260 Mo. 367; Toncrey v. Rail-

road, 129 Mo. App. 600; Meegan v. Railroad, 167 Mo. App 48; Powell v. Railroad, 126 Mo. App. 53; Boothe v. Loy, 83 Mo. App. 607; Hohstadt v. Daggs, 50 Mo. App. 240.

*Frumberg & Russell* for respondent.

(1) Failure to procure a chauffeur's license is no defense to the plaintiff's cause of action. Lindsay v. Cecchi, 80 Atl. 523; Southern Ry. Co. v. Vaughn, 118 Va. 692; Railroad v. Wishard, 104 N. E. 592; Lockridge v. Minneapolis & St. P. Railroad, 161 Iowa, 74; Zageir v. Southern Express Co., 89 S. E. 43; Derr v. Chicago, M. & St. P. Railroad, 157 N. W. 753; Black v. Moree, 185 S. W. 682; Hemming v. New Haven, 82 Conn. 661; Shaw v. Thielbahr, 82 N. J. L. 23; Light & P. Co. v. Aetna Acc. & Liability Co., 184 Ala. 601; Armistead v. Lounsberry, 129 Minn. 34; Hughes v. Steel Co., 136 Ga. 511; Crossen v. Railroad Co., 158 Ill. App. 42; Hyde v. McCreery, 130 N. Y. Supp. 269; Yeager v. Winton Motor Co., 53 Pa. Super. Ct. 203; Atlantic C. L. Co. v. Wier, 58 So. 641; Lucky v. Kansas City, 169 Mo. App. 666; Nafziger v. Mahan, 191 S. W. 1080. (2) Violations of statutes or ordinances constitute no cause of action or ground of defense unless they cause the injury. Karle v. Railroad, 55 Mo. 476; Holman v. Railroad, 62 Mo. 562; Kelly v. Railroad, 75 Mo. 138; Powell v. Railroad, 76 Mo. 80; Braxton v. Railroad, 77 Mo. 455; Hudson v. Railroad, 101 Mo. 13; Hanlon v. Railroad, 104 Mo. 381; Bluedorn v. Railroad, 121 Mo. 258; Jackson v. Railroad, 157 Mo. 261; Hutchinson v. Railroad, 161 Mo. 246. (3) A party cannot invoke a presumption which he has destroyed by his own evidence. Mockowik v. Railroad, 196 Mo. 550; Reno v. Railroad, 180 Mo. 483; Nixon v. Railroad, 141 Mo. 439; Bragg v. Railroad, 192 Mo. 331. (4) An ordinance requiring vehicles to keep as close as possible to the right-hand curb of the street should receive a reasonable construction. Mauchle v. Panama-Pacific Co., 174 Pac. 400. An instruction given for plaintiff and

purporting to cover the entire case may state the qualification relating to contributory negligence in general terms, leaving it to the defendant to ask more detailed instructions. Bellows v. Travelers Ins. Co., 203 S. W. 978; Keating v. Lewis, 74 Mo. App. 226; Weller v. Railroad, 59 Mo. App. 410; Halliburton v. Railroad, 58 Mo. App. 27; Phelps v. Salisbury, 161 Mo. 1; Newcomb v. Railroad, 182 Mo. 687.

WHITE, C.—The appeal is from a judgment against both defendants in the sum of seventeen thousand dollars for personal injuries.

On the fifteenth day of May, 1915, between 3:30 and 4 o'clock a. m., plaintiff was driving his automobile north on Jefferson Avenue in the City of St. Louis when he collided with a wagon belonging to the Baking Company, driven by Keller, and was severely injured. The suit was to recover damages for the injuries thus sustained.

The negligence alleged as ground for recovery was a violation by the driver, Keller, of Ordinance No. 1327 of the City of St. Louis, regulating traffic upon the streets, as follows:

"A vehicle, except when passing a vehicle ahead, shall keep as near the right-hand curb as possible."

The plaintiff also sets out Ordinance No. 1349 of the Revised Code of St. Louis, which related to lights required on vehicles between sunset and sunrise. The petition alleged a violation by defendant of that ordinance as a cause of the collision.

The petition also in effect alleged a violation of the statute, in that Keller drove his horse on the left side of the street and so caused the collision.

The joint answer of the defendants, after admitting that the defendant, General Baking Company, was a corporation organized and existing under the laws of New York and licensed to do business in Missouri; that at the times mentioned in the petition Keller was employed by the General Baking Company as driver of one of its wagons and was, at the date referred to in the peti-

tion, in discharge of his dutes as such servant of the General Baking Company; that the ordinances of the City of St. Louis were in force as set forth in plaintiff's petition; the collision, and that the plaintiff sustained injuries, denied all other allegations in the petition.

The answer then alleged certain acts of contributory negligence which would bar recovery: That at the time of the collision the plaintiff was driving his automobile on the public streets of the City of St. Louis, in violation of the statute and of the ordinances of the city, in that he was driving on the left side of said street when he should have been driving on the right side; that upon meeting the defendant's wagon on the street plaintiff, in violation of said statute and ordinances, negligently failed to seasonably turn to the right so as to pass said horse and wagon; that plaintiff was driving his automobile in violation of the statutes of Missouri and ordinances of the city in that he failed to use the highest degree of care that a very careful person would use under similar circumstances to prevent injury; that the plaintiff at the time, in violation of said statute and ordinance, was driving at a reckless and negligent rate of speed, greater than ten miles per hour, which said acts of negligence contributed to and caused plaintiff to be injured.

As a further defense it was alleged that at the time referred to in the petition the plaintiff was operating a motor vehicle as a chauffeur for hire and at that time had not filed his sworn statement in the office of the Secretary of State describing himself and the motor vehicle which he was competent to operate; had not paid a registration fee of $1.50 to the Secretary of State, so that he might be registered, and had not obtained his registration badge as provided and required by the Act of 1911, and for that reason he could not recover.

The reply was a general denial.

The plaintiff testified that he was in the livery business with an automobile on the 14th day of May, 1915,

and that he quit work about three o'clock in the morning of the fifteenth. That up to that time he had been hauling passengers, but then started home and took a young fellow, James Carroll, in his automobile. Another automobile driver, Williamson, started home from the same station about the same time. Williamson started in advance and the two drove northward on Jefferson Avenue, which runs north and south. On arriving at Lucas Avenue, which runs east and west and crosses Jefferson Avenue, they were delayed for a moment by a farm wagon, which caused the plaintiff to stop; after the wagon passed he continued to drive northward. The next street running east and west, north of Lucas Avenue, was Morgan Street. Williamson continued northward in advance of plaintiff from 50 to 75 feet, as estimated by the different witnesses. At a point a little north of the middle of the block between Lucas and Morgan the collision occurred. There were two parallel car-tracks in Jefferson Avenue. The plaintiff testified that he was driving northward on the east track with Williamson directly in front of him, when Williamson suddenly turned to the right, and defendant's wagon loomed up in front of plaintiff, and was so close before he saw it that he was unable to avoid it. He turned to the left—the west—as quickly as possible to escape the collision. The driver of the wagon jumped off, and the horse and wagon also turned to the west; the two vehicles came forcibly together. The car was turned upside down, the wagon turned over on its side and the horse's leg broken. The plaintiff was pinned beneath his automobile which took fire, and he was severely burned. He had traveled about two-thirds of the block between Lucas and Morgan when the collision occurred, and the horse and wagon were only about ten feet from him when he saw them.

Williamson, witness for the plaintiff, testified substantially to the same facts in relation to the incident. He said he was driving about fifty feet in advance of Stack, on the east side of the street. He suddenly met the wagon coming south on the east side of the street and

did not discover it until it was within ten feet. He "swung sharply to the right to the curbstone and escaped contact with the wagon;" immediately afterwards he heard the crash of the plaintiff's collision; he stopped his car and went back. He swore the wagon was headed south on the car track on the east side of the street.

James Carroll, who was riding with the plaintiff, testified that at the time of the collision Stack was going north on the east side of the Street and met the wagon coming south on that side; that Stack turned as quickly as he could to the west, to the left, the wagon turned in the same direction and the collision occurred.

On cross-examination Carroll admitted that he had been convicted of selling liquor contrary to law. Records of various convictions of James Carroll were offered in evidence by defendants and excluded.

Willett Davis, a colored woman, living on the east side of the street near where the collision took place, t.·tified that she saw the collision and that plaintiff was dr ving north on the east side of the street.

One Louis Nau testified that he saw Keller driving the bread wagon and going south on the east side of Jefferson Street.

Defendant introduced one Ezio Scappozzi, who was waiter in a lunch room on the east side of Jefferson Street near the point of collision. He testified that the wagon was' being driven south on the west side of the street; that the plaintiff's automobile passed on the west side going about 45 miles an hour.

Keller, defendant, testified that at the time of the incident he was driving south on the west side of the street. That his left wheel was partly in the southbound street-car track and the right wheel near the curb; that plaintiff was driving on the west side of the street and was right on him in front of his horse when he first discovered the automobile.

Each side offered witnesses, policemen and others, who testified as to the position and location of the ve-

hicles and horse after the collision and the character of the damage to each. The facts indicating how the collision occurred will be mentioned more fully in considering the defendants' demurrers to the evidence, which were filed at the close of the plaintiff's evidence and at the close of all the evidence. The demurrers were overruled.

I. Appellants do not deny that Keller was negligent if he was driving southward on the east side of the street. At the trial they endeavored to prove that the collision took place on the west side of the street; that the wagon was on the side, where it should have been, and the automobile was on the wrong side.

The demurrers to the evidence were on several grounds. It is claimed that the physical facts show the plaintiff's evidence, in explanation of the way the collision happened, could not have been true because he must have been driving at a reckless speed. No ordinance is in evidence fixing the speed limit, but the vehicles collided with such force as to turn the automobile upside down and turn the wagon over on its side, besides breaking the shaft of the wagon and breaking the horse's leg. It is argued that this shows conclusively the speed was dangerously and negligently high. Stack and Williamson both testified that they were going at from eight to ten miles an hour. The evidence showed the horse was in a trot. If the automobile was going at the rate of ten miles an hour and the horse was going half that fast, which the evidence tended to show, then the combined speed was fifteen miles an hour. This is not a slow rate by any means, and we are not prepared to say that vehicles, heading together nearly sidewise, as these apparently did, would not be turned over by that impact or that it would not be sufficient to break a horse's leg and a shaft. The force of the blow did not depend entirely upon the weight and speed of the automobile, but upon the power of its engine. If the engine was not shut off, as seems probable, its continuous force and the consequent momentum of the car

might break a shaft and upset a wagon at even a lower rate of speed than that testified to. It was a question for the jury to decide whether the speed was excessive, and we cannot say the physical facts showed conclusively a rate of speed so great as to be dangerous or beyond that which the plaintiff's witnesses testified to.

It is further claimed by appellant that the position in which the vehicles and the horse were lying after the collision and the marks indicating how they came together, proved they could not have collided on the east side of the street, as plaintiff's witnesses testified. Police officers, who arrived at the scene while the vehicles were in the position in which the collision left them, explained in detail the situation. The automobile was upside down with the front pointing to the northwest and the rear on the east track. The wagon was facing southwest, with the rear wheels between the two tracks. The body of the horse was lying partly between the tracks and partly on the west track. One witness testified that the wagon lay on its right side, while another witness swore that it lay on its left side, against the automobile, with the left wheel cramped under the wagon.

The plaintiff and his witnesses testified that when the wagon suddenly appeared in front of the automobile, the automobile was turned to the left to avoid a collision and the wagon swerved in the same direction at the same time. If the two vehicles thus came together, the automobile pointing to the northwest and the wagon to the southwest, it is evident that the impact would have driven them further toward the west. The fact that each vehicle was pointing westward when it was found, and the rear of each vehicle was further east than the front, tends to corroborate plaintiff's witnesses that both were turned to the westward when the collision took place. There were other facts; the left hind leg of the horse was broken, the left shaft of the wagon was broken, a mark on the left front hub of the wagon showed where it was struck and the spokes of the left

front wheel were broken or loosened. No marks on the automobile are mentioned to indicate where it was hit except that the left front tire was gone; witnesses seemed to think it was burned off. The automobile was enveloped in flames immediately after the collision. All these marks show that the automobile struck the horse and the left front wheel of the wagon. The blow being upon the left side necessarily would tend to drive the wagon toward the west. This would be the natural consequence of both parties turning sharply to the west, each thinking the other was going in the opposite direction. Naturally, also, both vehicles were further west at the moment of contact than when the drivers first discovered each other.

Four or five witnesses, including the plaintiff, testified that the wagon was driving southward on the east side of the street. Two witnesses, Keller and another, testified that he was driving on the west side of the street, west of the west track. Keller also testified that when he met Williamson, the latter was well over on the east side of the street and he didn't have to turn out as he passed him. It is fairly evident from the physical facts that the collision could not have happened as Keller testified. He could not possily have been on the west side of the street, struck on the east side of his wagon and knocked several feet *in the direction from which the blow came.*

The street at that point is thirty-six feet from curb to curb; the two street railway tracks were nearer to the east side than to the west side of the street. They were four feet and ten inches apart, and each track was five feet and three inches wide. From the east rail of the east track to the curb was nine feet and six inches, and from the west rail of the west track to the west curb was eleven feet and four inches, so that the east rail of the west track was near the middle of the street. If the plaintiff was driving on the east track he was near the middle of the east half of the street, and if Keller was driving south on that track he was several feet east

of the center of the street, instead of that distance west.
The physical facts as explained by the witnesses corroborate the theory of the plaintiff that both vehicles were well on the east side of the street when they confronted each other and swerved to the west before they came together.

II. Appellants claim further that plaintiff should have been non-suited because his evidence shows he was violating the ordinance which he pleads in his petition, as follows: "A vehicle, except when passing a vehicle ahead, shall keep as near the right-hand curb as possible."

**Unreasonable Ordinance.**

It is pointed out that, according to the testimony of plaintiff and his witnesses, he could have driven nearer the curb, near enough to have escaped the collision, and for that reason he cannot recover.

As the ordinance reads it appears to be practically impossible of strict application, and for that reason we must have recourse to some rules of construction to see what effect may be given it. An ordinance which is grossly unreasonable will be held void. [State ex rel. v. Railroad, 262 Mo. 720, l. c. 734.]

Generally an ordinance is construed by the same rules as a statute. The courts have laid down rules by which a statute or an ordinance may be construed so as to save it from extinction. If a statute is susceptible of two constructions, one of which renders it unconstitutional, and the other makes it valid, the court will adopt the latter. A statute will not be given a construction which will make it unreasonable or absurd. [Lumber Co. v. Railroad, 216 Mo. 658, l. c. 671-2; State ex rel. v. Public Service Commission, 270 Mo. 429, l. c. 442.] As said in the Lumber Co. case, supra, l. c. 672:

"The inartificial manner in which many of our statutes are framed, the inaptness of expressions frequently used and the want of perspicuity and precision not infrequently met with, often require the court to look less at the letter or words of the statute than at the context,

the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law-giver." The passage is quoted from an Alabama case.

As said by this court in the case of Keeney v. McVoy, 206 Mo. l. c. 68, quoting from an earlier case: "The letter of a statute may be enlarged or restrained, according to the true intent of the framers of the law."

And in Gist v. Construction Co., 224 Mo. 369, l. c. 379: "It is a fundamental proposition that laws, whether state or municipal, are presumed passed in a spirit of justice and for the welfare of the community. It follows they should be so interpreted, if possible, as to further that purpose."

In case of St. Louis v. Christian Brothers College, 257 Mo. 541, l. c. 552, it was held: "It is permissible in arriving at the intent of the lawmaker to either expand or limit the meaning of his words, when it becomes necessary to make the law, harmonize with reason."

It was said by Judge LAMM in case of Rutter v. Carothers, 223 Mo. 631, l. c. 643: "Those are recognized canons of construction which ordain that the naked letter of the law must gently and a little give way to its obvious intendment; that those who interpret the laws must not impute injustice to the lawmaker by so interpreting his language as to unnecessarily produce harsh and unreasonable results, or impute to him a disposition callous to natural justice."

Judge WALKER held, in the case of Johnston v. Ragan, 265 Mo. 420, l. c. 435: "Statutes are not to be construed so as to result in an absurdity or to impose unnecessary burdens."

If the ordinance under consideration were to be given a literal construction the result would be absurd. If every vehicle should keep as close to the curb *as possible* the right wheel of the vehicle would run in the gutter and scrape the curb practically all the time, turning out only to pass vehicles that might be standing along the street or in passing vehicles that were going

slower in the same direction. The driver must keep his vehicle winding in and out because that sinuous course would be necessary if he would keep as *"near the curb as posible."*

If it is possible to give this ordinance a reasonable construction, such construction must be given it. Its evident purpose was to regulate and facilitate traffic upon the streets, to make it easy and expeditious instead of difficult. A literal construction and application would make traffic much more difficult, especially in a crowded thoroughfare, and defeat the very purpose which prompted its passage. We will not assume that the city authorities intended to impose "unnecessary burdens" upon persons traveling the streets. The ordinance must be made to "harmonize with reason." Therefore, it is necessary that the "naked letter of the law must gently give way to its obvious intendment." "As close as possible" certainly was not meant literally by the ordinance-makers, otherwise it would be necessary to declare the ordinance void altogether. It must be construed to mean substantially what is meant by the statute requiring the driver of a vehicle to keep safely to the right side of the highway.

The intention of the requirement was to cause vehicles to keep well to the right side of the street, so that other vehicles approaching from the rear would have room to pass without crossing to the left side. Plaintiff was on the right side of the street, and Keller, in utter violation of the statute, was on the *wrong* side of the street. Suppose Keller had sued plaintiff for damage caused to him by the collision, could it be said that Stack was negligent and liable because he did not drive nearer the curb?

It must be noted that the ordinance does not say a vehicle shall *always* keep near the curb, nor use words which imply that. In order to effectuate the purpose of the ordinance we are at liberty, under the rules of construction mentioned, to supply a word or words. "Usually," "when practicable," or words of similar import must be understood as qualifying the language, "keep

near the curb." It was for the jury to say whether, under the circumstances, plaintiff was negligent.

They were instructed to find for defendants if plaintiff was not driving as "close to the curb . . . as was reasonably possible." We think the issue was fairly and properly submitted to them.

The purpose of such a provision was more clearly expressed in an ordinance of San Francisco, as follows: "The person in control of any vehicle *moving slowly along* and upon any public highway shall keep such vehicle as closely as practicable to the right-hand boundary of the highway, *allowing more swiftly moving vehicles reasonably free passage to the left.*" It was held by the Supreme Court of California that a vehicle traveling on the right side of the street near the middle, injured by an automobile approaching from the rear, was not as a matter of law guilty of contributory negligence which would bar recovery. In Mauchle v. Panama-Pacific International Exposition Co., 174 Pac. 400, l. c. 401, the court said:

"Convenience, condition of the street, freedom of the street from other vehicles, or, on the other hand, its more or less crowded condition, must all be taken into consideration in determining the position upon the street which the slowly moving vehicle must occupy, in order that the person propelling it or driving it shall be free from negligence."

III. It is further contended that plaintiff cannot recover because he did not seasonably turn to the right, but turned to the left.

The statute relating to motor vehicles, Laws 1911, p. 327, sec. 8, provides that whenever a person operating a motor vehicle shall meet another person on a highway riding or driving a horse he "shall reasonably [seasonably] turn the same to the right of the centre of such highway so as to pass without interference." From the position of the street-car tracks, though the plaintiff turned to the left, he was still to the right of the center of the street at the time of

**Turning to Right.**

the collision. If it be conceded that in turning to the left in order to avoid the collision with a wagon he was turning in a manner prohibited by the statute, that, under the circumstances, would not as a matter of law prevent his recovery. An error of judgment in seeking to escape injury in a sudden emergency is not contributory negligence which would prevent recovery, although it contributes directly to the injury. [Kleiber v. People's Ry. Co., 107 Mo. 240, l. c. 247; Lange v. Mo. Pac. Ry. Co., 208 Mo. 458, l. c. 467, 479; Siegrist v. Arnot, 86 Mo. 200; Ransom v. Depot & Express Cos., 142 Mo. App. 361, l. c. 368; Sweeney v. K. C. Cable Ry. Co., 150 Mo. 385, l. c. 399; Underwood v. Ry. Co., 190 Mo. App. 407, l. c. 418.]

IV. The plaintiff was without a chauffeur's license and at the time he was in the business of running an automobile for hire; that same night he had been driving, carrying passengers, and at the time of the injury was on his way home.

Chauffeur's License.

The Act of 1911, Laws 1911, p. 327, sec. 11, provides that: "Every person desiring to operate a motor vehicle *as a chauffeur* shall file in the office of the Secretary of State a sworn statement containing his age, name and address, and the trade name, style and motive power of the motor vehicles he is competent to operate . . . . Upon the filing of such statement, the Secretary of State shall register the name of said person in a book to be kept for the purpose and assign him a distinctive number. . . . And shall forthwith issue and deliver to him a certificate of registration. The chauffeur shall thereupon pay a registration fee of one dollar and fifty cents."

Paragraph 4 of Section 11 provides that no person shall operate or "drive a motor vehicle *as a chauffeur* upon a public highway of this State after the first day of August, nineteen hundred and eleven, unless such person shall have complied in all respects with the requirements of this section."

A violation of the act is declared to be a misdemeanor punishable by fine.

Appellants claim their demurrer to the evidence should have been sustained because the plaintiff had no chauffeur's license and no right to operate his automobile, and was a trespasser upon the street, although he had paid the usual registration fee and obtained a license number for his car. Appellants cite Massachusetts cases in support of their position where it is held under a statute similar to ours that a driver of an automobile without a license or registration, was a mere trespasser upon the highway and had no rights against persons lawfully using the highway, except that they could not recklessly or wantonly injure him or his property. They argue that the situation is similar to one where a foreign corporation has not complied with the statute so as to be authorized to do business in this State; it cannot enforce a contract entered into in pursuance of business in this State. Where that rule is announced, however, it is held that while a foreign corporation cannot recover on a contract, it may recover for a tort involving the very property which is the subject of the contract. It may recover in trover. [Farrand Co. v. Walker, 169 Mo. App. 602; United Shoe Machinery Co. v. Ramlose, 231 Mo. 508.] The analogy which the appellants invite does not support their deduction.

The weight of authority is against a contention of appellant on the proposition. Massachusetts seems to be the only state announcing the doctrine contended for. The rule prevailing generally is that when a person is negligently injured by another, although he may be doing some act in violation of a statute or ordinance at the time, such violation will not prevent his recovery for injuries received unless it contributed to his injury. [Southern Ry. Co. v. Vaughan, 118 Va. 692, l. c. 703-704; Atlantic Coast Line R. R. Co. v. Weir, 41 L. R. A. (N. S.) 307; Hemming v. New Haven, 82 Conn. 661, 74 Atl. 892; Black v. Moree, 185 S. W. (Tenn.) 682; Armstead v. Lounsberry, 129 Minn. 34.] The rule is applied

in each of those cases to the failure of a chauffeur or driver of an automobile to procure a license.

Many other cases might be cited in various jurisdictions holding the same, but the above cases are well considered and review the authorities at length. The Tennessee case cites and quotes from decisions in many states where the rule is laid down substantially as stated above. The Vaughan case, 118 Va. quotes from numerous text-books where the principle is recognized as stated, l. c. 704, and among others from Shearman & Redfield on Negligence, as follows:

"If the plaintiff is acting in violation of a statute or ordinance at the time the accident occurred, and such violation proximately contributes to his injury, he is guilty of contributory negligence. But if such violation does not contribute to the injury, it is no defense."

It is a well established rule in this State that a plaintiff suing for damages caused by the negligence of another can recover, notwithstanding he was negligent himself, unless his negligence contributed to the injury. Contributory negligence must contribute before it will bar recovery. [Reed v. Mo. Pac. Ry. Co., 50 Mo. App. 504.] In that case the act of contributory negligence was the violation of a statute. It has been directly held by this court that a plaintiff in an action for damages caused by tort, can recover notwithstanding he was violating the law at the time he received the injury, where the act in violation of the law was not the proximate cause of the injury. [Phelan v. Paving Co., 227 Mo. 666, l. c. 711; Kupferle Co. v. Terminal Ry. Co., 275 Mo. 451, l. c. 457.] The last case cites approvingly Blackburn v. Railroad, 180 Mo. App. 548, l. c. 555. In the Blackburn case, plaintiff, in violation of an ordinance, was moving a house along the street and came in contact with an uninsulated electric wire negligently maintained by the defendant. The violation of the ordinance by plaintiff did not bar recovery.

It is argued that the plaintiff was a trespasser on the street, in the same position as a trespasser on the

Stack v. General Baking Co.

private grounds of a railway company and could not recover for mere negligent injury. The plaintiff, however, was not a trespasser on the street; he had a right to drive his automobile there just the same as any other person had; the law forbade him to operate a motor vehicle on the street "as a chauffeur." By "a chauffeur" is meant one who operates an automobile for hire. The law permitted him to drive that car upon the street when he got a license *for the car*. He was not permitted to carry passengers in it until he got *his* license *as a chauffeur*. If he violated the law he was guilty of a misdemeanor and punishable by fine. His act which authorizes such fine is not operating his automobile on the street, but carrying passengers for hire. If he had never carried a passenger for hire he would never have violated the law.

But if it be conceded that he was violating the law by merely driving upon the street without his chauffeur's license, there was no causal connection between the absence of his registration certificate and the collision; he would have collided just as he did if he had had that paper in his pocket. On principle he could not be denied recovery on account of a violation of the law which had not even a remote connection with the injury he received. The principle announced by this court, as stated above, applies to this case. It has been applied to such cases in most of the other states. The demurrers to the evidence, therefore, were properly overruled.

V. Defendant offered in evidence the records of the court of Criminal Correction of the City of St. Louis in four cases, one showing where James Carroll was convicted of selling liquor without a license; one where James Carroll and Rosie Carroll were convicted of dispensing liquor on election day; and two where James Carroll was convicted of petit larceny. These were offered, after James Carroll had testified, for the purpose of affecting his credibility;

Impeachment.

they were excluded by the court, and appellants assign error to the ruling.

When Carroll was on the stand he was asked on cross-examination if he had been convicted of dispensing liquor on election day. He answered, "I believe I have." He was then shown a certified copy of the record of March 22, 1909, where James Carroll and Rosie Carroll were shown to have been convicted of dispensing liquor on election day and the witness said, "No sir, that is not me." He was then asked if he was ever convicted in the Court of Criminal Correction in the City of St. Louis of the crime of petit larceny, and this occurred:

"Q. I will show you this certified copy and ask you if you don't remember the 5th day of December, 1910, you were convicted in that court charged with petit larceny? A. No, sir; positively never with petit larceny.

"Q. And were you ever convicted in the St. Louis Court of Criminal Correction on Monday, April 24, 1917, on the charge of petit larceny? A. No, sir; positively not. I was convicted twice, I think, of selling liquor on Sunday. That James Carroll there is my uncle, not me."

The records mentioned were offered to contradict these statements of the witness, and excluded as stated.

Appellants call attention to Section 6383, Revised Statutes 1909, which provides that a person convicted of a criminal offense shall be a competent witness, "but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he himself answered any question relative to that inquiry, and the party cross-examining him shall not be concluded by his answer."

This court commenting upon that provision in a case cited by appellant, State v. Sovern, 225 Mo. l. c. 591, said that a witness may be questioned as to his previous conviction of a crime, and "*if the witness should deny it,* under the provisions of the statute it

would not be binding upon the party making the inquiry, but resort could then be had to the only legitimate proof of the conviction of the witness, that is, the record," etc. (Italics are ours).

In all the cases cited by appellant construing that statute, there was no question as to the *identity* of the witness with the person whose name appeared in the record of conviction. Here the witness admitted that he was convicted of selling liquor on Sunday. That made the record of that conviction clearly inadmissible. He did not deny, but admitted, that he had been convicted of dispensing liquor on election day, but denied that he was convicted at the same time with Rosie Carroll, as shown by the record produced for his inspection.. He denied that he had ever been convicted of petit larceny, but said that the conviction of petit larceny were those of his uncle by the same name. Now it will be noticed that he did not deny that James Carroll had been convicted of dispensing liquor at the same time with Rosie Carroll, nor deny that James Carroll had twice been convicted of petit larceny; he simply denied that he was the person mentioned in the record. Would those records tend to contradict the witness? The facts shown by them stood admitted by him. No evidence was offered by defendants to show that he was the same person.

At this point appellants have recourse to the presumption, arising from identity of names. Some of the **Presumption.** authorities speak of the identity of name as prima-facia "evidence" of identity of person. [State v. Moore, 61 Mo. 1. c. 279; State v. McGuire, 87 Mo. 642.] In some cases it is said that the identity of the names in prima-facie "proof" of identity of person. [Greer v. Lumber & Mining Co., 134 Mo. 1. c. 95.] The difference between "proof" and "evidence" is pointed out by Best in his work on the Law of Presumption, L. L. 47, pp. 26-28. A fact may be *proven* not alone by evidence but by deductions, reasoning from evidence. In almost every case the ultimate facts to be proven in

order to make out a case are not susceptible of being established by direct evidence; they must be inferred or presumed from the evidentiary facts established. As a convenience, as a necessity, courts must have recourse to certain presumptions which arise from given facts and which are not susceptible of direct proof. Without such presumptions the administration of justice would be much more burdensome and difficult.

To speak of the identity of name as prima-facie "evidence" of identity of persons is unfortunate and misleading. It is more properly designated a pure presumption. [Keyes v. Munroe, 266 Mo. l. c. 121; Produce Exchange Bank v. North K. C. Development Co., 212 S. W. 898; In re Breck, 252 Mo. l. c. 320; 10 R. C. L. pp. 877-878.] Not only do the authorities generally speak of it as a presumption, it is *necessarily* a presumption, and must be classed with other rebuttable presumptions which the law recognizes, and must be subject to the same treatment and rules in application to a given case.

A general rule, always recognized in this State, is that where evidence exists in proof of a given state of facts, all presumptions in relation to it vanish and cannot be indulged. Such, for instance, is the presumption of ordinary care in death claims where a man is killed, with no evidence as to his conduct at the time; he is presumed to have been in the exercise of ordinary care, and the only issue in the suit against the person charged with his death is whether or not the defendant was guilty of negligence. But if there is evidence to prove that he was guilty of contributory negligence which caused his death then he could not have the benefit of any presumption of care so as to submit the issue to the jury. [Higgins v. Ry. Co., 197 Mo. l. c. 317; Myers v. Kansas City, 108 Mo. l. c. 487; Mockowik v. Railroad, 196 Mo. l. c. 571; Rodan v. St. Louis Transit Co., 207 Mo. l. c. 410.]

In the last case this court said: "A presumption, therefore, of a rebuttable character, such as here, only

remains in force until repelled by contrary evidence. If follows that when the evidence is contrary to the presumption invoked, the presumption itself cannot be laid hold of for use in administering justice in a particular case."

In Brannock v. Railroad, 147 Mo. App. 301, l. c. 320, GOODE, J., in announcing the principal, used this language:   "When there is evidence on an issue of fact the truth is to be found from the evidence and not presumed to be so and so, as is done in the absence of evidence."

If appellants in this case are correct, in cases where there is evidence of contributory negligence which would bar recovery, the presumption of care would be prima-facie "evidence" to be submitted, so that the jury might weigh the presumption along with the other evidence. But in all such cases the plaintiff was non-suited and not given the benefit of any presumption.

If a person inflicts death upon another with a weapon calculated to produce death it is presumed, in the absence of explanatory evidence, that the killing was murder in the second degree. But in murder cases it is held improper to give an instruction to that effect where there is evidence to show how the homicide took place. [State v. Swearengin, 269 Mo. l. c. 189.]

In a will case where there is testimony *pro* and *con* as to testator's mental capacity, the ordinary presumption that the will was executed as his free act and deed is not to be indulged or considered. [Morton v. Heidorn, 135 Mo. l. c. 617.]

The rule is applied to a presumption which obtains in relation to the movement of animals (Sowders v. Railroads, 127 Mo. App. l. c. 125); and to a case where it was attempted to have advantage of the presumption that public officers do their duty (Miller v. Town of Canton, 112 Mo. App. l. c. 329; Button Co. v. Shirt Co., 140 Mo. App. l. c. 383). The presumption *cannot be submitted to the jury on an issue of fact* where there is evidence explanatory of how the act was done. "A pre-

sumption is not evidence." [Brunswick v. Standard Acc. Ins. Co., 213 S. W. l. c. 51.]

Judge Blair in the recent case of State ex rel. v. Ellison, 268 Mo. 239, considered at length the propriety of submitting to the jury the determination of the effect of the rebuttal presumption, and said, l. c. 257: "The presumption itself is not evidence. It is not a thing to be 'overcome' by evidence in the sense that it, of itself, adds anything to the strength of the evidence of the party invoking it. Despite the presumption, the party upon whom it casts the burden in a civil case makes out his case when he adduces evidence proving his allegation of fact to be more probably true than is the contrary."

The records were offered in evidence *after Carroll had stated the facts.* They showed that one James Carrol was convicted of petit larceny, a fact not denied, but did not show that the witness was that James Carroll. The defendant sought to bridge the chasm by resort to a presumption which is not evidence. After the evidence by witness Carroll that he was not the defendant Carroll in the larceny cases, at once the presumption vanished. The defendants didn't offer any evidence attempting to identify the witness Carroll with the defendant Carroll. They could not submit the presumption to the jury to contradict the statement of the witnesses. Evidence must be refuted by contradictory *evidence.* The jury were not obliged to believe Carroll, but his evidence was to be weighed, uninfluenced by the presence of any presumption. There was no error in excluding the records.

VI. Appellants claim there was error in giving the first instruction for plaintiff. That instruction, after predicating the plaintiff's right to recover upon the negligence of the defendants, if proven as set forth in the instruction, proceeded as follows: "And if you further find that plaintiff at said time was driving his automobile in a careful and prudent manner and at a rate of speed so as not to endanger the property or the

life or limb of any person, and was using the highest degree of care that a very careful person would use under like or similar circumstances to prevent injury or death to persons on or traveling over, upon or across said Jefferson Avenue, your verdict should be for the plaintiff and against both of said defendants.''

The objection is that the instruction purports to cover the entire case and authorizes a verdict without requiring the jury to find the plaintiff was free from contributory negligence upon specifications set up in the defendants' answer. It omitted a requirement of the jury to find that the plaintiff ''seasonably turned to the right'' on meeting antoher vehicle, and ''drove as near the right hand curb as possible'' as required by the ordinance.

A mere omission which means nothing more than a non-direction in an instruction given for plaintiff will not amount to a reversible error. Where the plaintiff's instruction omits some feature which is not an element of his cause of action, but of the defense which is set up, the omission may be cured by instructions for defendant submitting that feature. And that applies to contributory negligence pleaded in defense. [Hoagland v. Kansas City Rys. Co., 209 S. W. 569, l. c. 572; Wingfield v. Railroad, 257 Mo. 347, 1. c. 360-1; also the dissenting opinion of WOODSON, J., in the last case, 372. See also, Hughes v. Railroad, 127 Mo. 447; Lange v. Missouri Pacific, 208 Mo. 1. c. 478; Cooney v. Prior, 203 S. W. 630; Davis v. Ry. Co., 192 Mo. App. 422; Riegel v. Biscuit Co., 169 Mo. App. 1. c. 517.]

In this case the instruction for plaintiff not only submitted the plaintiff's theory as to his grounds of recovery but submitted in a general way the issue of contributory negligence. If there was anything lacking in placing the question of contributory negligence before the jury it was fully supplied by the instructions given for the defendant, which were explanatory and furnished specifications of the general statement in the instruction complained of; each specific negligent act

alleged in the answer was submitted with direction to find for defendant if the fact alleged was found to be true.

There being no error in the record the judgment is affirmed. *Mozley, C.,* concurs; *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.