**Estella M. SAUNDERS, (Plaintiff) Appellant,**

**v.**

**CRUSADER LIFE INSURANCE COMPANY, (Defendant) Respondent.**

**No. 24655.**

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1967.

Application to Transfer Denied Jan. 8, 1968.

John A. Watkins, Kansas City, for appellant.

James Wilson Spencer, Davis & Haley, Kansas City, for respondent.

MAUGHMER, Commissioner.

The plaintiff, Estella M. Saunders, as named beneficiary, sued the defendant, Crusader Life Insurance Company, for the death benefits under a life insurance policy which that company had issued on the life of her husband, David Saunders, who died on January 4, 1965. There was a verdict and judgment for plaintiff. Defendant's motion for new trial was sustained and plaintiff has appealed.

Crusader Life Insurance Company is a Kansas Corporation, authorized to and doing a life insurance business in Missouri. On December 28, 1961, it issued Policy #5831 to David Saunders, a Missouri resident. The plaintiff, described as the insured's wife, was the named beneficiary. This particular contract is a "reduced term policy" and was written for a term of 25 years with annual reducing benefits from $12,000 during the first year to $900 for the 25th year. The insured's death having occurred during the fourth year, death benefits, if any such were payable, were $11,328. The policy itself was received in evidence.

It provided for a grace period of 31 days during which an overdue premium might be paid without penalty. Being term insurance, no cash value, extended insurance, or automatic loan privileges existed. Therefore, the coverage lapsed completely 31 days after default in premium payment unless there was a reinstatement. The first premium and all subsequent payments which were made, were on a quarterly basis. The amount of the quarterly premium was $35.98.

Plaintiff's first amended petition alleges: issuance of the policy, payment of the first quarterly premium, naming plaintiff as beneficiary, death of the insured on January 4, 1965, proof of death, asserted the policy was "in full force and effect on the date of the insured's death", that $11,568 was due and that demand for payment had been made and refused. The petition also prayed for interest at 6 percent from January 4, 1965, penalties and attorneys' fees for vexatious refusal to pay, and for costs.

It has been held (Connor v. United Insurance Co., Mo.App., 313 S.W.2d 222) that the defense of lapse and forfeiture for nonpayment of premiums is not only an affirmative defense, but it must be pleaded. Defendant's answer denied plaintiff's allegation that the policy was in force when insured died, but did not specifically and affirmatively plead lapse and forfeiture for nonpayment of premiums. However, the question of lapse was the only defense put forward, was the only issue litigated and both parties treated it as the main controversy or dispute. Therefore, the issue of payment or nonpayment of premiums must be treated as having been raised by the pleadings. Section 509.500, V.A.M.S.

No witness was called or testified on behalf of the plaintiff. Plaintiff (1) introduced the policy itself into evidence; (2) read admissions of defendant that Contract #5831 on the life of David Saunders was issued on December 28, 1961, the first quarterly premium of $35.98 had been received and accepted, Estella M. Saunders was named beneficiary and (3) read the following requests for admissions which had elicited no responses from defendant; the death certificate of insured was supplied to defendant, plaintiff had demanded payment which defendant refused, and insured died on January 4, 1965. Thereupon plaintiff closed her case. There was no showing as to the date upon which proof of loss, by delivery of death certificate or otherwise, had been made.

The defendant called three witnesses. Mr. Robert P. Lyons, vice-president and agency director of the Crusader Company, said he was the agent who sold the policy sued upon, which he described as term insurance. He testified that such term insurance accumulated no cash values, provided for neither extended insurance nor automatic loans and would lapse and become forfeited if any premium was not paid when due or within the 31 days grace period thereafter. Defendant sought to have this witness testify from his personal knowledge and based upon information derived from his own and from the company's records as to the date of lapse. The court excluded this oral testimony.

Lillie Owens, supervisor of the premium billing department of defendant company, testified. She said it was her duty to "bill the policy holders when their premium is due, 15 days before the due date". She identified Exhibit 4, which was received in evidence as a copy of the notice mailed to the insured on September 15, 1964, advising that a quarterly premium of $35.98 would be due on September 28, 1964. This witness stated further that the company, through her department, sent a second notice approximatey 30 days after the premium was due and if payment was not then received within 20 days, a Reinstatement Form Letter was sent. Such a Reinstatement Form Letter (Exhibit 5) was identified and the witness testified that such a letter was mailed to insured in November, 1964.

Mr. Gabriel S. Alexander testified that he was secretary and office manager of the defendant company and as such custodian of the company's records. He said that these

records were made and kept under his supervision. He identified Exhibit 6 as the history record card of policy #5831, Mr. David Saunders, and it was received in evidence. This card shows issuance of the policy on December 28, 1961, quarterly premium of $35.98, and that the last premium ever paid was on July 23, 1964, which payment, considering the date of issue, paid the quarterly premium due on June 28, 1964, and paid for coverage until September 28, 1964, when an additional quarterly premium was due. Mr. Alexander said that this card showed that two quarterly premiums (September 28, and December 28, 1964) were due and unpaid when Mr. Saunders died on January 4, 1965. Plaintiff, as a part of its cross-examination of Mr. Alexander, offered in evidence some checks signed by the insured and payable to Crusader. The latest of these checks was dated February 25, 1964, and bears the stamp "Paid" on March 3, 1964, by the bank on which it was drawn.

The court denied defendant's motion for directed verdict submitted at the close of all of the evidence. The jury returned the following verdict:

"We, the jury, find the issues in favor of the plaintiff and assess her recovery at $11,328.00, and assess interest at $792.96 being the total sum of $12,120.96. It is also recommended by the jury that attorneys fees be paid in addition.

/s/ Orville B. Washburn
Foreman".

It might be noted that this verdict recommends allowance of the penalty of attorney fees, when that issue had not even been submitted to the jury.

Defendant duly filed its motion for new trial and therein, among others asserted errors as follows:

(1) Denial of the motion for directed verdict.

(2) In refusing the testimony of the witness Robert Lyons, agent who wrote the policy, who attempted to testify from the records (before same were introduced) and from his "independent recollection of facts

showing that said policy had lapsed", said testimony not being in violation of the Dead Man's Statute.

(3) "In giving instructions submitted by plaintiff, in that said instructions permitted indulgence in wild fishing expedition, speculation, and groundless inferences and presumptions". The court sustained the motion for new trial "for the following reasons":

(1) The Court erred in excluding material evidence offered by the defendant.

(2) The Court erred in the giving of Instruction number four. We set forth Instruction number four in full:

### INSTRUCTION NO. 4

"If you find in favor of the plaintiff, then you must award the sum of $11,328.-00.

"In addition, you may award the plaintiff interest at the rate of 6% per annum on the above amount from the time you believe that the policy proceeds should have been paid."

"Not in M.A.I.

Submitted by plaintiff.

Given RHK J".

Plaintiff says Instruction No. 4 was not and is not prejudicially erroneous because a defect as to allowance of interest can be cured through entry of the proper amount of interest by the court. This would undoubtedly be true in those instances where the date on which interest is allowable is clear and definite, for example in a suit on a promissory note where the interest is by the statute or by the instrument itself allowable from the due date. Section 408.020, V.A.M.S. However, in a suit on an insurance policy, the interest is not necessarily allowable from the date of insured's death or from any other fixed date. This particular policy provided that payment would be made "immediately upon receipt of due proof of the death of the insured, during the continuance of this policy". The evidence does not show *upon what date* any proof of death was submitted or upon what

date demand for payment had been made and refused, which could be considered as waiving formal proof of death. Furthermore, the plaintiff had no evidence that the insured's death occurred during the continuance of this policy except such as might result from the prima facie case.

Instruction No. 4 gave the jury no guidance for determining the date upon which interest might be allowed. It made no mention and required no finding as to when proof of loss was made, and did not direct the jury to fix upon a date when the company should reasonably have paid. It merely said "you may allow interest * * * from the time you believe that the policy proceeds should have been paid". Such an instruction neither limits, restricts nor provides any guidelines to aid the jury. It definitely gave the jury a roving commission, permitted speculation, guesswork and has no approval in M.A.I. In our opinion the giving of Instruction No. 4 was prejudicially erroneous.

Owens v. McCleary, 313 Mo. 213, 281 S. W. 682, 685, was an action for malpractice. A judgment for plaintiff was reversed and the cause remanded for error in giving plaintiff's Instruction No. 1. The court said:

"Instruction No. 1 directed the jury to determine whether 'in making said treatment the defendant carelessly and negligently injured the plaintiff' without giving them any guidance as to the specific acts or omissions, which, under the law, would constitute negligence. It permitted them to base a finding for plaintiff on any theory of negligence which they could construct or evolve out of their own minds, and was therefore erroneous".

On appeal plaintiff contends respondent has the burden of supporting the trial court's action in sustaining the motion for new trial without clear specification of grounds. This is undoubtedly a correct general statement of the law. We doubt if it is applicable here because the court did specify the grounds. Furthermore, in our opinion the record does support the action of the trial court in granting a new trial.

Plaintiff also says no offers of proof were made as to excluded evidence and hence no error was preserved. The excluded testimony was quite definitely material evidence that the policy had lapsed. However, we prefer to approve the action of the trial court in granting a new trial for the error in Instruction No. 4.

■ Apparently plaintiff's position before the trial court and here is that proof of issuance of the policy, payment of one premium, beneficiary designation, death of insured and demand for payment makes a prima facie case for recovery and casts the burden of proving nonliability (lapse and forfeiture for nonpayment of premium) upon defendant. The cases, including Wilson v. Kansas City Life Ins. Co., 233 Mo. App. 1006, 128 S.W.2d 319, and Connor v. United Insurance Co., supra, so hold and we have no hesitancy in going this far with plaintiff. However, plaintiff, as she must in the instant case if she is to prevail, goes further. She says that regardless of defendant's evidence and even if plaintiff offers no additional evidence on the contested issue but rather elects or is forced to stand on her prima facie case or presumption, nevertheless, the case *must be submitted to the jury* as presenting an issue of fact. Plaintiff says this is so, even where, as here, the company records, standing unimpeached, show lapse of the policy and where plaintiff on her part produces no substantial evidence, or any evidence whatever, showing any premium payments which would have kept the policy in force on the date of insured's death. Plaintiff contends further that in such a situation where reasonable men could only conclude that the policy had lapsed, nevertheless, if the jury chooses to disbelieve the record evidence and rely on plaintiff's prima facie case or for any other reason, returns a verdict for plaintiff, the courts are powerless to correct such miscarriage of justice. We do not believe that such is the law. If it were, recovery could be had on an insurance policy which clearly

had been lapsed for years provided the jury returned a plaintiff verdict even though such a verdict rested entirely upon a presumption and in the face of substantial evidence from which reasonable men could only conclude that there had been a lapse and forfeiture.

This question was explored rather fully and in the light of the Missouri decisions in O'Brien v. Equitable Life Assur. Society of United States, 212 F.2d 383, 385, 386. The United States Circuit Court of Appeals, Eighth Circuit, there ruled: (1) an insured's unexplained death by violence is alone sufficient to make out a prima facie case of accidental death, but such prima facie case is rebuttable; (2) where plaintiff's prima facie case depends upon a rebuttable presumption, which is destroyed, the prima facie case collapses with the presumption; (3) the scintilla of evidence doctrine is no longer the law in Missouri; (4) unless plaintiff, in an action to recover under double indemnity, produces some substantial evidence negativing the excepted misconduct asserted by the insurer, a directed verdict for insurer will be proper; (5) a directed verdict for defendant was affirmed. We quote, as pertinent and applicable, from the opinion:

"It is plaintiff's contention that her burden of establishing a submissible, prima facie case of accidental death was satisfied upon the mere showing of the insurance agreement and the violent death of the insured at the hands of another. Plaintiff insists that defendant had the burden of proving its 'affirmative defense' that the insured was engaged in the commission of a felony at the time of his death. Thus it is argued, not without logic, that plaintiff's prima facie case and defendant's affirmative defense should have been submitted to the trier of the facts.

\* \* \* · \* \* \*

"In effect, plaintiff argues that once this 'prima facie' case is established, the burden thereafter rests with defendant to prove its affirmative defense on the excepted risk which, whatever the testimo-ny, creates a question of fact submissible to the jury. \* \* \*. The presumption of accidental death, while accomplishing the function of evidence in so far as plaintiff's initial burden of going forward is concerned, nevertheless is not evidence of the fact presumed and is merely a rule of procedure or 'rebuttable legal presumption'. It casts upon defendant the burden of going forward with substantial evidence to the contrary which, if adduced, destroys the procedural presumption on which plaintiff had relied as an evidentiary substitute. As so strikingly quoted by Justice Lamm of the Missouri Supreme Court in Mackowik v. Kansas City, St. J. & C. B. R. Co., 1906, 196 Mo. 550, 94 S.W. 256, 262, ' "Presumptions \* \* \* may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts" ' ".

Our own Supreme Court (Stack v. General Baking Co. et al., 283 Mo. 396, 223 S.W. 89, 97), quoted with approval this excerpt from Brannock v. St. Louis & S. F. R. Co., 147 Mo.App. 301, 126 S.W. 552, 557:

"[Where] there is evidence on an issue of fact the truth is to be found from the evidence, and not presumed to be so and so, as is done in the absence of evidence".

We deeply doubt if plaintiff, on the evidence here presented, was entitled to have her case submitted to the jury. However, it is possible evidence justifying submission might be available on a retrial. We shall, therefore, on this appeal simply sustain and approve the action of the trial court in granting a new trial. We do this because of the error committed in giving Instruction No. 4.

The order and judgment awarding defendant a new trial is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.